STATE of Missouri, Respondent,

v.

Merle Edward ZWEIFEL, Appellant.

No. 39555.

Missouri Court of Appeals,
St. Louis District,
Division One.

Aug. 22, 1978.

Motion for Rehearing and/or Transfer
Denied Sept. 15, 1978.

Application for Transfer Denied
Oct. 10, 1978.

Zenge & Smith, Canton, for appellant.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Daniel Lyman, Jefferson City, William O. Green, Pros. Atty., Scotland County, Memphis, for respondent.

SMITH, Judge.

Defendant appeals from his conviction of manslaughter by a jury. The jury assessed punishment at ten years imprisonment; the trial court reduced the sentence to five years.

The victim, Mr. Erwin, was the superintendent of the Gorin R-III School. Defendant's son, Carl, was a junior in that school. Erwin had a discussion with Carl in a shop class during which he made statements which Carl interpreted as indicating a doubt in Erwin's mind of the truthfulness of an excuse for an absence which Carl's mother had sent to the school and a doubt of the truthfulness of Carl's explanation of the absence. Carl left the school and went home to report the conversation to his parents. His father, defendant, returned to the school with him. There is no evidence that defendant's intentions were other than peaceful. When defendant and Carl arrived at the superintendent's office, Erwin was not there. Shortly Erwin came up the stairs (24 in number). A discussion ensued followed by a scuffle between Erwin and defendant. Erwin was 59, six feet or taller and weighed 230 pounds or more. Defendant was 36, five feet six or eight, and weighed between 150 and 170 pounds. The initial scuffle was broken up by several teachers. Some further talk ensued initially between Erwin and Carl and then between Erwin and defendant. While no profanity was used, the exchange between Erwin and defendant could be considered provocative from both sides and resulted in a second scuffle. While defendant's evidence was that Erwin was the aggressor in the second scuffle, there was evidence upon which the jury could believe defendant charged into Erwin and was the aggressor. The two men, locked in combat, fell into Erwin's office onto a desk and then to the floor with defendant on top. There was testimony, contradicted by defendant's evidence, that defendant choked Erwin while on the floor. The men were quickly parted and defendant and Carl left the school. Erwin was coughing and having difficulty breathing and two of the teachers attempted to provide first aid. Erwin died almost immediately from circulatory failure caused by cardiac arrest.

The results of the autopsy established that ten to twelve days before his death, Erwin had sustained a myocardial infarction, apparently unknown to him or anyone else.

■ Defendant's first contention on appeal is that the state failed to establish that the altercation between defendant and Erwin was the producing cause of Erwin's death. This contention is based upon the medical testimony in the case that in the case of a man who had had a recent myocardial infarction, as Erwin had, it is impossible to pinpoint exactly the stress which produced the cardiac arrest. While the

state's medical expert conceded it was possible that the action in climbing the stairs or that even no stress at all could have triggered the arrest, he stated it was more probable that the physical altercation with defendant was the cause.

In *State v. Brinkley*, 354 Mo. 1051, 193 S.W.2d 49 (1946) l. c. 54, the rule to be applied was stated as follows:

"The applicable rule, as stated in *Guthrie v. City of St. Charles*, 347 Mo. 1175, 1188, 152 S.W.2d 91, 97(8), is that where a plaintiff shows a casualty resulted from one of several causes, for only part of which the defendant was responsible, no case is made—unless the evidence also shows a *greater probability* that the proximate cause was one for which the defendant was liable." (Emphasis in original). See also *State v. Null*, 355 Mo. 1034, 199 S.W.2d 639 (Mo.1947) [10].

The evidence here meets the test set forth in *Brinkley*. Although conceding the possibility of another cause for the death, the medical expert testified the altercation was the more probable cause. Additionally, the evidence was that the fatal heart attack occurred either during or immediately after the altercation. The evidence was sufficient to support the jury verdict.

■ Defendant's second point is that the court erred in not permitting counsel to cross-examine a medical expert on allegedly inconsistent statements made by the expert at the preliminary hearing. The record does not contain the transcript of the preliminary hearing and the transcript was not offered into evidence. In such posture the matter has not been preserved for review.

*State v. Hughes*, 562 S.W.2d 140 (Mo.App. 1978) [2]. From the record before us and the colloquy between counsel and court we are unable to determine whether the doctor's testimony at the preliminary hearing was inconsistent with that at trial. The trial court held it was not and we have no basis to disagree.

■ Defendant also premises error upon the trial court's failure to sustain an objection to the prosecutor's closing argument. The argument is set forth in the margin.[1] Again the matter has not been preserved. The court stated it wished to hear the rest of the statement before ruling. No further objection was made and under the circumstances the trial court could properly assume that the remainder of the statement had clarified the argument so that defendant no longer found it objectionable. See *State v. Henderson*, 510 S.W.2d 813 (Mo. App.1974) [21]. Additionally, the completed statement was a correct statement albeit inartfully worded, that the defendant may be convicted if his acts are the proximate cause of the death even though the decedent's physical condition made the consequences more severe than might be expected. *State v. Johnson*, 475 S.W.2d 95 (Mo. 1971) [1]; *State v. Brinkley, supra* [8]. We find no abuse of discretion by the trial court.

■ Defendant next contends that the court erred in failing to excuse a venireman for cause. Defendant correctly sets forth the law that he is entitled to a full panel of qualified jurors before making peremptory challenges. While we recognize that practical difficulties are encountered, particularly in rural circuits, where excuses for cause

---

1. "Now we have this issue of whether or not the cause was the assault. I don't want you ladies and gentlemen to be confused, and I'm sure Mr. Zenge doesn't either. In order to convict the Defendant of murder or manslaughter, you do not have to find beyond a reasonable doubt this assault caused the death of Mr. Erwin—

MR. ZENGE: If the Court please, we object to that. That's not a correct statement of the law. They do have to find beyond a reasonable doubt.

COURT: Let him finish the statement so I can get the thrust of it.

MR. GREEN: What you must find is that the assault was one of several causes that hastened death. The Defendant takes his victim as he finds him. It was a misfortune to engage a man with a heart condition in the assault. That's not the State's fault. That's Mr. Zweifel's fault. Ladies and gentlemen, I submit to you and I ask you this one question: Do you believe, do you have any reasonable doubt that if this assault had not occurred, would Mr. Erwin still have been alive when Mr. Zweifel left that office? My answer to that question is yes, and I don't think there's any way that you can confuse that issue at all."

reduce the panel below that required, such practical difficulties do not obviate the above stated proposition. An unqualified venireman must be excused upon a challenge for cause regardless of the effect upon the size of the venire panel. Here, however, the record does not support defendant's contention. In his brief, defendant asserts that the venireman in question had been the losing party in substantial litigation in which defendant's attorney represented the prevailing party and that defense counsel and the prosecutor had agreed that this venireman would be excused as well as another venireman represented by defendant's attorney in which the prosecutor was on the opposite side. This agreement was stated to be "subject to the approval of the Court." Those assertions do not find support in the record. While in chambers after voir dire defendant's attorney made reference to the situation, his statement was neither affirmed nor denied by the prosecution. The voir dire examination by the court had posed questions to the veniremen concerning prejudice arising from contacts with counsel and the venireman in question did not indicate any prejudice. Aside from counsel's statement of presumed prejudice, there is nothing of record upon which the court could base a finding of actual prejudice. No request was made to reopen voir dire examination to permit further inquiry of the venireman in question. On the record before us we find no error by the trial court.

■ Defendant's last point is that a new trial should have been granted because of the bias and prejudice of the jurors as allegedly revealed in an affidavit of the foreman. Since no objection appears of record to the affidavit, it is to be considered by the court. See *Bailey v. Hilleman*, 566 S.W.2d 504 (Mo.App. decided May 9, 1978). As in *Bailey*, however, we find the affidavit conclusory in nature and nonspecific in fact. We find no abuse of discretion by the trial court in refusing to grant a new trial on the basis of the affidavit.

Judgment affirmed.

CLEMENS, P. J., and McMILLIAN, J., concur.