**STATE of Missouri, Respondent,**

v.

**Paul Michael WILLIAMS.**

No. 39932.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 21, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

Application to Transfer Denied
Nov. 14, 1979.

Shaw, Howlett & Schwartz, James J. Knappenberger, Clayton, for appellant.

John D. Ashcroft, Atty. Gen., Kathryn Marie Krause, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

In a felony-murder case the defendant was convicted of first degree robbery and first degree murder. The jury assessed the punishment for the robbery at five years and a day and life imprisonment for the murder. The appeal charges the trial court with the following prejudicial errors: (1) failing to grant his request for a mistrial when the prosecutor asked the defendant on cross-examination whether he had committed a prior felony; (2) overruling his objection to the prosecutor's closing argument alleged to be a misstatement of the law; (3) denying his motions for judgment of acquittal and challenging the indictment; (4) in giving an alleged deviation from MAI–CR 6.19. We affirm.

What commenced as a purse snatching escapade terminated in the grim and unexpected death of 66 year old Virginia Ambrow. The State's evidence established that at approximately 9:00 p. m. on a midsummer's evening, Mrs. Ambrow and her husband had just completed their shopping at a Richmond Heights victualery. As Mr. Ambrow was placing the groceries in the trunk of his auto, he heard his wife call his name. He looked up to see Mrs. Ambrow being dragged on her back across the store parking lot by a man. She was desperately clutching onto her purse while her assailant was just as determined to wrest it from her. After being dragged about 45 feet, Mrs. Ambrow finally lost her grip as she struck a concrete car stop on the parking lot. Her assailant, victorious in his struggle for the purse, leaped into the passenger's seat of an awaiting auto driven by a companion and sped off with the malgained booty. An ambulance was summoned to aid Mrs. Ambrow, and she was immediately taken to a hospital. Massive medical efforts to sustain her life were futile. At 10:17 p. m.—a little over an hour after the assault—she succumbed to a cardiac arrest.

The evidence established that Mrs. Ambrow had suffered a stroke approximately one year previously; that apparently she had recently experienced two myocardial infarctions—one, two to five days old and the other, one to two weeks old. However, the State's medical expert witness positively attributed Mrs. Ambrow's mortal heart attack to her being knocked down and dragged across the parking lot in the purse snatching episode.

Identification of Mrs. Ambrow's assailant was given by Philbert Mack. Mack testified that he had driven the defendant to the grocery store parking lot and waited in the auto while the assault on Mrs. Ambrow took place. When the defendant had accomplished his purpose, he leaped into Mack's auto and the two fled. After divvying the monetary contents with Mack, the defendant threw the purse, some credit cards and other items into a sewer. Mack later took police to the sewer where the purse and other of Mrs. Ambrow's personal

items were retrieved. Further inculpatory evidence was given by an acquaintance of the defendant who testified that he had blatantly acknowledged killing Mrs. Ambrow.

The first point raised by defendant causes substantial difficulty. The case was well tried by both counsel. The State produced substantial and convincing evidence of defendant's guilt of the crime charged—robbery and felony-murder. Yet, when the defendant, who had no prior record of convictions, testified the prosecutor regrettably strayed perilously close to the precipice of prejudicial error by asking the following question on cross-examination:

Q. [prosecutor] Now Mr. Williams [defendant], on Friday, April 23 of 1976, about ten A. M., did you commit the felony of—?

Defendant's counsel interrupted with an objection and request for a mistrial. The trial court, specifically noting that it was exercising its discretion, denied the motion for mistrial but on defendant's counsel's request directed the prosecutor to refrain from further questioning on the issue.

There was no apparent bad faith attributable to the prosecutor by her question, for the record shows that both parties agreed that the defendant had indeed been charged with another crime with the case set for trial the same week as the instant proceeding. The prosecutor obeyed the trial court's ruling, and nothing further was said before the jury beyond the incomplete question and defendant's counsel's objection and request for mistrial.

Further, at the time of the prosecutor's question, under Missouri law inquiry as to whether the defendant had committed another crime even though not convicted thereof had been held to be a proper line of inquiry. *State v. Foster*, 349 S.W.2d 922 (Mo.1961). But in the meantime, between defendant's trial and his appeal, *State v. Dunn*, 577 S.W.2d 649 (Mo. banc 1979), has intervened.

In *Dunn*, the defendant was asked the following question on cross-examination:

Q. Mr. Dunn, on February the 17th, 1975, did you steal property from an automobile in St. Louis County. Mr. Taylor (defense counsel) I am going to object to that, your honor. That is completely improper. I am going to ask for a mistrial. That is an improper question about some other crime.

The Court: Overruled.

Q. (By Mr. McConnell) (Prosecutor) You may answer sir.

A. No, sir, I did not. *Id.* at 650.

Before finding judicial error in allowing the foregoing question to stand, the Missouri Supreme Court made a careful review of the law regarding cross-examination of a defendant and other witnesses as to prior convictions, acts of misconduct and traits of character. The following conclusions were reached in *State v. Dunn*. *Id.* at 653:

. . . [A]lthough a defendant testifying in his own defense may, as a general proposition, be impeached the same as any other witness, nevertheless, a court should, on objection being made, limit certain cross-examination of a defendant where the cross-examination is technically purely collateral as to general credibility and the nature is such as to impair the defendant's right to a fair trial on the charge brought against him. This does not apply to prior convictions of criminal offenses.

\* \* \* \* \* \*

The extent of cross-examination rests largely in the discretion of the trial court and an appellate court will not interfere unless the discretion is abused. *State v. Whipkey*, 358 Mo. 563, 215 S.W.2d 492 (1948). Cross-examining a defendant as to alleged prior acts of misconduct, particularly where details are stated and the acts are somewhat similar to the case on trial, as here, lends itself to the creation of substantial prejudice even though the answers are in the negative. The cases of *State v. Foster*, supra, *State v. Williams*, [492 S.W.2d 1 (Mo.App.1973)] and *State v. Summers*, [506 S.W.2d 67 (Mo. App.1974)], . . . do not require a

trial court to permit all cross-examination of a defendant as to prior acts of misconduct and do not preclude an appellate court from determining that the specific questioning was erroneous and constituted prejudicial error.

Therefore, under *Dunn*, it appears that reversible error would have occurred had the prosecutor completed her question by designating the specific crime alleged to have been committed by defendant. But *Dunn* leaves it manifestly clear that the trial court is vested with broad discretion in controlling the extent of cross-examination.

■■ The trial court here was positive in expressing that its action in denying the motion for mistrial was based on the exercise of its discretion. The question does stop short of detailing the particular acts alleged to have been committed by the defendant which were similar to those for which he was on trial. Also, the trial court absolutely forbade the prosecutor from making any further inquiry which would force the defendant to exercise his Fifth Amendment rights. We therefore believe that under the particular circumstances of this case there was no reversible error, as: (1) the inquiry did not go into the specific details of the alleged crime; (2) the question was incomplete; (3) the trial court forbade any further inquiry regarding the commission of crimes;[1] (4) the defendant was not required to make any answer; (5) the trial court in the exercise of its discretion and from its unique coign of vantage was able to specifically determine the prejudicial effect of the incomplete question. *State v. Stowers*, 580 S.W.2d 516 (Mo.App. 1979); (6) that at the time of trial such inquiry was proper under *State v. Foster*, supra. We believe that our conclusions are within the guidelines of *State v. Dunn*, supra. But we also believe that prosecutors should be extremely circumspect in making any inquiry into prior acts of misconduct and should not make specific inquiry of a defendant as to whether he has committed other crimes. The type of question under

attack here should be absolutely avoided under peril of a declaration of mistrial.

■ Defendant next contends that the trial court committed error in overruling an objection to the following prosecutorial remarks during closing argument: "It isn't some case where maybe he had a lady sitting down in a bus and takes a purse off her lap and she dies from a heart attack. That would make him guilty of Murder First Degree, anyhow." Defendant's counsel objected to the comment as a misstatement of the law. The objection was overruled with the trial court stating that the jury had been instructed that remarks made in closing argument were not evidence. Defendant is correct in asserting that during closing argument counsel should not argue questions of law, present false issues, or explain substantive law. *State v. Holzwarth*, 520 S.W.2d 17 (Mo. banc 1975); *State v. Van*, 543 S.W.2d 827 (Mo.App.1976). But assuming that the comment was improper, it is not every such remark that will constitute ground for reversal. *State v. Lacy*, 548 S.W.2d 251 (Mo. App.1977); *State v. Belleville*, 530 S.W.2d 392 (Mo.App.1975). We are persuaded by the precept that the trial court has substantial discretion in monitoring closing argument and determining whether comments are erroneously prejudicial. *State v. Moomey*, 581 S.W.2d 899 (Mo.App.1979). We cannot say as a matter of law that the jury was misled or confused as to the applicable law to constitute reversible error. *State v. Belleville*, supra.

■ Defendant's third point of alleged error pertains to the indictment and proof of guilt. He claims that there was no causal connection between the robbery and the death and that the indictment was too vague. He stresses that Mrs. Ambrow had a pre-existing heart condition which had recently caused two prior myocardial infarctions. We need not detail the evidence beyond that previously set forth. There was substantial credible evidence from the State's medical expert that the assault on

---

1. The holding of this case does not impinge upon the right of inquiry into the conviction for crimes on the issue of a witness' credibility. § 491.050, RSMo 1978.

Mrs. Ambrow in the taking of her purse was the absolute cause of her fatal heart attack. After the prosecutor formulated a hypothetical question inclusive of the relative facts of the case including the pre-existing heart condition, the following question was posed to the State's medical expert:

Q. Mrs. Ambrow's heart had those incidents occur to her as I described in my hypothetical. Would that incident cause her heart to go into failure, the stress from being drugged (sic) across the parking lot?

A. I am of the strong opinion that they would and that they did.

*State v. Zweifel*, 570 S.W.2d 792 (Mo.App. 1978), is felicitous to the situation here. In *Zweifel*, the victim who had experienced a recent mild cardial infarction, succumbed to another when the defendant initiated a brouhaha with him. It was held that the medical testimony that the altercation "was the more probable cause" of the victim's death was sufficient evidence to support the defendant's conviction even though another possible cause of death existed by reason of the prior heart attack. Such is the situation and proof in this case. *See: State v. Brinkley*, 354 Mo. 1051, 193 S.W.2d 49 (1946).

■ Defendant next argues that the indictment was too vague. The alleged defective indictment, in pertinent part, reads:

. . . on or about the last day of July, 1976, the defendant(s) did willfully, unlawfully, and feloniously acting with another, steal a purse and its contents, . . . the property of one Virginia Ambrow, then and there in the lawful care and custody of Virginia Ambrow, and did then and there feloniously and by force and violence to the person of said Virginia Ambrow, rob and steal the said property from the person of, in the presence of, and permanently deprive the owner of the use thereof and to convert the same to his own use;

\*      \*      \*      \*      \*      \*

. . . on or about the 1st day of July, 1976, the defendant(s) did unlawfully and feloniously acting with another, cause the death of Virginia Ambrow, while committing the offense of robbery for force and violence against Virginia Ambrow on July 1, 1976; . . . . .

The purpose of an indictment or information is to inform the defendant of the nature of the accusation made against him. *State v. Jenkins*, 494 S.W.2d 14 (Mo.1973). The information in the indictment or information must be sufficiently detailed so that the accused understands the nature of the charges and is able to prepare an adequate defense. *State v. Hoelting*, 562 S.W.2d 703 (Mo.App.1978). Here, the indictment clearly meets that standard. If defendant believed he needed more details, his recourse was to file a bill of particulars pursuant to Rule 24.03 V.A.M.R. His failure to do so constituted a waiver. *State v. Jenkins*, supra.

■ Finally, defendant contends that the trial court committed prejudicial error in giving the State's verdict directing instruction, in that it failed to conform to the language of MAI–CR 6.19, "Felony Murder: Robbery". However, the instruction upon which defendant relies was not in effect at the date of the trial.[2] The court gave the proper instruction, MAI–CR 6.19 "Murder in the First Degree in Robbery", effective as of September 28, 1975, and, therefore, committed no error.

Judgment affirmed.

REINHARD, P. J., and CRIST, J., concur.

---

2. The MAI–CR 6.19 "Felony-Murder Robbery" instruction submitted by defendant applied to offenses committed before September 28, 1975.

The offense here was committed on July 1, 1976.