**STATE of Missouri, Respondent,**

v.

**Joyce MALVEAUX, Appellant.**

**No. WD 31241.**

Missouri Court of Appeals,
Western District.

Aug. 4, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 2, 1980.

As Modified Sept. 9, 1980.

Application to Transfer Denied
Oct. 15, 1980.

Gary Oxenhandler of Tofle & Oxenhandler, Columbia, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Earl W. Brown, III, Asst. Atty. Gen., Kansas City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a jury conviction of two counts of stealing property (the property being valued at more than fifty dollars) by deceit in violation of § 560.156, RSMo 1969. The jury affixed punishment at six months incarceration in the county jail on each count. The trial court judgment ordered the sentences to run concurrently. Timely motion for new trial was overruled and this appeal followed. The judgment is affirmed.

Appellant presents six alleged errors. In summary, these are: (1) the trial court erred in taking judicial notice of the rules and regulations of the Division of Family Services; (2) the trial court erred in taking judicial notice of such rules and regulations because of the state's failure to comply with Rule 25.32 [1]; (3) the trial court erred in refusing to grant a mistrial or in the alternative, to confiscate notes allegedly made by a juror during trial; (4) the trial court erred in permitting the state to amend the information prior to trial, and in the instructions the court gave because neither the information nor the instructions charged appellant with the offense pursuant to §§ 205.966/205.967, RSMo 1978; (5) the trial court erred in overruling appellant's objection to the state's final argument since the prosecutor failed to argue punishment in the initial portion of the state's closing argument and (6) the trial court erred in giving instruction no. 11 because this instruction allegedly failed to comply with MAI–CR 2.80.

Appellant does not challenge the sufficiency of the evidence, therefore a summary of the evidence pertinent to the disposition of the alleged errors suffices.

Original charges were filed against appellant. On April 25, 1979, the information was amended alleging she had stolen food stamps valued in excess of $50.00 between March 19, 1976 and July 30, 1977. State's evidence revealed appellant received substantial monies in the form of child support from her former husband during the above specified period of time. Appellant continually listed one of her children as a member of her household and as a dependent. This child was gainfully employed at a local hospital. Appellant applied for and ultimately was granted social security disability benefits, which resulted in an initial lump sum payment of $3,823.50, along with continuous monthly social security benefits for herself and her children. These monthly benefits continued until October, 1977. During the questioned period of time, appellant received, on several occasions, aid to dependent children under the state's welfare program. In April 1976, appellant applied for and received $247.00 worth of food stamps under the welfare program.

The state produced witnesses who explained the procedural and substantive requirements which enable an applicant to receive welfare assistance. As an integral part of the program, the applicant is required to sign a form referred to as a *fraud*

---

[1]. Effective January 1, 1980, this rule was renumbered and is now Rule 25.05.

*provision*, indicating that the information on the application for assistance is true and accurate.

While the evidence was controverted as to whether or not specific attention was given to the *fraud provision* relative to appellant's application, witnesses for the state recalled specific contacts, conversations, and processing of appellant's applications, including specific reference to the status of appellant's income. On her application of March 29, 1977, appellant indicated no receipt of monies from social security or child support. On subsequent applications during the questioned period, appellant did not list any income from social security or child support. Appellant applied for food stamps, listing her employed son as a member of the household and listing her only source of income as aid to dependent children. Appellant, at no time during the questioned period, listed any financial changes. During this same period, appellant signed the *fraud provision* attending her applications.

In addition to witnesses who explained the substantive and procedural aspects of the welfare program, the state introduced documentary evidence supporting the charges, with specific reference to the application forms, the *fraud provision* and cancelled checks.

In addition to several witnesses called on her behalf who testified as to her reputation for honesty and truthfulness, appellant testified on her own behalf. She contended that as a result of injuries sustained during employment in September, 1975, she filed for social security benefits. She contacted her caseworker in March of 1976, informing him that her gas was about to be shut off. The caseworker advised her that she should file for unemployment benefits and that she borrow funds from a friend to meet the utility cost. At the time of trial, this caseworker no longer worked for the state and did not appear at trial. Appellant denied receiving child support from her husband during the year 1976 and the first three months of 1977.

Appellant continued her testimony, explaining that her caseworker instructed her to notify the state about social security benefits after she received the "Award Letter" granting the social security benefits, although she had advised this caseworker she already received checks from the Social Security Administration. Appellant continually listed her employed son as a member of the household, but denied receiving any part of his wages. A witness for the appellant testified the son resided with her and not with appellant.

Appellant testified she made several attempts upon the record to effect changes in her financial status, but was opposed in her attempts by persons with the state whom she contacted. Appellant denied she intentionally took money from the state and that she was guilty of any wrongdoing.

A witness for appellant, in addition to testifying about appellant's character, testified that appellant had served as an active member on the county welfare commission. This commission met once a month to discuss matters involving the welfare program and specific problems of welfare recipients.

The state alleged and appellant strenuously denied the charge of willfully and intentionally obtaining food stamps, which resulted in the substantial overpayment thereof. The evidence and the inferences therefrom, if believed, were sufficient to support the finding by the jury.

■ Since the first and second alleged errors address the same basic issue, they are taken up and disposed of together. Appellant charges the trial court erred in taking judicial notice of the code of regulations, and appellant's argument in support appears predicated upon three basic contentions. First, appellant argues the court cannot take judicial notice of such regulations and cites in support thereof, *Kersey v. Harbin*, 531 S.W.2d 76 (Mo.App.1975); *Abbott v. Civil Service Commission of the City of St. Louis*, 546 S.W.2d 36 (Mo.App.1976); *Allen v. State Department of Public Health and Welfare*, 479 S.W.2d 183 (Mo.App.1972), overruled on other grounds by *Hill v. State Department of Public Health and Welfare*,

503 S.W.2d 6, 11 (Mo. banc 1973); and *Missouri Dental Board v. Riney*, 429 S.W.2d 803 (Mo.App.1968). In further support, appellant cites Mo.Const. Art. IV, § 16.

The first portion of appellant's argument must fail. In the first instance, Mo.Const. Art. IV, § 16, which reads, "All rules and regulations of any board of other administrative agency of the executive department, except those relating to its organization and internal management, shall take effect not less than ten days after the filing thereof in the office of the secretary of state," has no application to the instant case because there is no evidence to support any alleged application of the rules herein within a period of less than ten days after such rules were filed. Additionally, appellant, in holding to the prohibition against courts taking judicial notice of rules, ignores the legislative change in 1975 to § 536.031 5 applicable to the instant case. This section reads, "The courts of this state shall take judicial notice, without proof, of the contents of the code of regulations."

Appellant broadens her argument that the court cannot take judicial notice of such rules if they have been changed, modified or repealed subsequent to the particular offense or occasion in question. Appellant draws too narrowly the interpretation of judicial notice and would conclude with such an argument that although a rule or regulation was viable and in effect at the time of an offense, if subsequent thereto, that rule or regulation were changed, modified or repealed, the court is prohibited from taking judicial notice thereof at the time of trial upon the alleged offense regardless of the reason or justification for the change, modification or repeal of the rule. Even absent the citing of authority for such a proposal, such interpretation as that urged by appellant cannot stand, because it ignores the existence, validity and viability of a rule or regulation as such rule or regulation bears in point of time to the question involved. Absent the declaration that a rule or regulation is unconstitutional, which would categorize such rule or regulation null and void for all purposes, both prior and subsequent to its enactment, there is no merit to appellant's contention for such a conclusion.

In pursuing her attack upon the court's taking of judicial notice of the rules and regulations, appellant argues that the trial court erred in so doing because the prosecution failed to comply with Rule 25.32 in not providing appellant with copies and notice of the rules and regulations (13–CSR–40, Income Maintenance Chapter of the Code of Regulations). Appellant's argument is such that she equates such rules and regulations (regarding the discovery rule) with statements and other evidence either secured from an accused, witnesses or that which is in the exclusive possession of the prosecution. Appellant cites as authority for this proposal, *State v. Harrington*, 534 S.W.2d 44 (Mo. banc 1976) wherein conviction was reversed upon the state's failure to produce an F.B.I. report, and *State v. Buckner*, 526 S.W.2d 387 (Mo.App.1975), which was a reversal of a conviction upon the state's failure to produce a signed statement of a witness.

Rule 25.32 (now 25.05), subsection (C) reads, "If the defense in its request designates material or information which would be discoverable under this Rule if in the possession or control of the state, but which is, in fact, in the possession or control of other governmental personnel, the state shall use diligence and make good faith efforts to cause such materials to be made available to the defense counsel, and if the state's efforts are unsuccessful and such material or other governmental personnel are subject to the jurisdiction of the court, the court, upon request, shall issue suitable subpoenas or orders to cause such material or information to be made available to the state for disclosure to the defense."

The *obvious purpose of the rule is to* prevent undue advantage for the prosecution and against an accused upon the basis of surprise.

Appellant's contention gives rise to a two–fold question, that question being: Did the state have exclusive control or possession of such information and a duty or

obligation to provide such documentation within the meaning of Rule 25.32(C)? Appellant contends that since the rules and regulations were modified subsequent in point of time to the offense charged, it was the obligation of the state to provide this information to appellant.

The Code of Regulations are public records equally accessible to an accused as they are to the state and hence do not fall within the purview of Rule 25.32(C) as applied to the facts in this case.

At the time appellant's motion for new trial was before the trial court, a hearing was held. A witness who was an employee for the state appeared and testified as to the procedures followed regarding the maintaining of the rules and regulations when there are changes, modifications and repeals of such rules and regulations. This witness explained that as change, modification and repeal occurs, for physical and practical record keeping reasons, discarded rules and regulations are removed and replaced with others as the change, modification or repeal dictates. This witness, however, testified that such discarded rules and regulations are maintained as "one historical set" and, "as a practical matter, we're requested by attorneys and the state to give them certified copies of the historical rules. That is rules that have been changed in the more recent updates of the code from what they were at a given point in time, historically, and we normally give them certified copies of the rules upon their request."

When inquiry was made regarding the status of "discarded rules and regulations", this witness further testified that administration of the rules and regulations does not include interpretation of the rules and regulations, whether they be current or past in their applicability, because such interpretation is deferred to the courts.

Regarding appellant's points (1) and (2), the trial court is empowered to take judicial notice of the code of regulations pursuant to § 536.031 5. The modification, change or repeal of such rules or regulations as they apply to the facts and circumstances of this case (absent the declaration of such rules or regulations being unconstitutional) does not prohibit the trial court from taking judicial notice of these rules or regulations because of their applicability or lack thereof to the instant offense. Any code of regulations or particular rule or regulation contained in the instant case is not within the exclusive control or possession of the state, it is by contrast accessible to an accused, and hence does not fall within the purview of Rule 25.32(C).

For the foregoing reasons, points (1) and (2) are ruled against appellant.

During the course of trial, while counsel for both parties were before the bench, out of the hearing of the jury and for the purpose of determining whether or not certain exhibits should be passed to the jurors for their examination, appellant's counsel stated to the court, "There is a juror in the middle row . . . a juror that is sitting in the middle row on the right side has a pad and pencil. Seems to be taking notes on the proceedings . . . We believe that this is improper, and should be admonished not to do so." The trial judge then attempted to respond, but was interrupted by appellant's counsel who demanded a mistrial. The trial court denied the request for a mistrial. Counsel for appellant then requested the notes be confiscated and be made a part of the record.

The trial court then discussed the situation with both counsel and decided to instruct the jury panel on the issue. The pertinent part of that admonishment or instruction reads as follows:

"THE COURT: All right, members of the jury, it's been brought to the Court's attention that perhaps one or more jurors may be taking notes. Uh, generally, that is not proper, the principal reason being that to do so is distracting, most jurors would not be able to take complete notes, fragmentary notes would be apt to result in attaching undue weight during deliberation to certain facts or circumstances and to disregarding and slighting of other facts or circumstances of equal significance. Experience has shown it is better

to depend upon the combined recollections of all of the jurors than upon notes taken by one or more of them. You are, therefore, individually and collectively, requested to refrain from making any notes or memoranda and to destroy any that might have been made up to this time. If either at the time the case is submitted to you or during your deliberations any juror desires that any or all exhibits admitted in evidence be delivered to the jury room, then the Court will provide such exhibits to you upon your request."

Appellant charges under her point (3) above that the court erred in not granting a mistrial upon a juror's taking notes or in the alternative, in the trial court not confiscating the notes. Appellant contends such note-taking is contrary to § 547.020 1, RSMo 1978 and Rule 27.19 [2]. Section 547.-020 1 reads:

"547.020. *New trials—when granted.—* The court may grant a new trial for the following causes, or any of them:

(1) When the jury has received any evidence, papers or documents, not authorized by the court, or the court has admitted illegal testimony, or excluded competent and legal testimony, or for newly discovered evidence;"

Under former Rule 27.19 and § 547.020 1, the granting of a new trial is not mandatory, but lies within the discretion of the trial court. The result of that discretion, unless abused, will stand on appeal, State v. Foster, 490 S.W.2d 659 (Mo. App.1973). There is no fixed rule which presets a decision to set aside a verdict wherein misconduct of a juror is alleged, rather, each case must be reviewed on its own facts and circumstances, see State v. Schlagel, 490 S.W.2d 81 (Mo.1973).

In the instant case, appellant's counsel, early on in the trial, alleged that a juror was taking notes. This court believes counsel was truthfully advising the trial court. The real issue is whether or not appellant suffered any prejudice as a result of the alleged incident. The trial judge took immediate steps to caution all members of the jury panel. This action served to safeguard the rights of appellant without unduly drawing attention to the issue or singling out any particular juror.

There is no evidence in this case to show that whatever the particular juror was doing or writing was ever observed or made known to the other jurors. There is even less evidence that appellant sustained any prejudice, and under the attending facts and circumstances of the instant case, the trial court properly exercised its discretion to resolve the matter. Through the record by the court, in addition to the above instruction, there is found repeated caution by the court and counsel that the jurors should be guided only by the evidence. That such circumstances supported by the court's instruction did not constitute an abuse of discretion, see State v. Michaels, 543 S.W.2d 245 (Mo.App.1976).

Point (3) is found to be without merit and is ruled against appellant.

Under point (4), appellant alleges the trial court erred in permitting the state to amend the information just prior to trial and, in conjunction with the charges, the trial court further erred in the submission of instructions nos. 4 and 5 because both the information and instructions failed to charge appellant pursuant to §§ 205.966 and 205.967, RSMo 1978. Appellant was charged by information pursuant to § 560.-156, RSMo 1969. Appellant argues that she should have been charged under §§ 205.966 and 205.967 as these statutes are of a special nature, limited to welfare fraud, and thus are exclusive regarding the prosecution for welfare fraud.

Appellant was convicted of fraud on two counts. Count I dealt with fraud in obtaining food stamps. Count II dealt with fraud in obtaining aid to dependent children.

The mere reading of § 205.967 immediately dispels appellant's theory upon Count II as the legislature expressly declared this section not to be an exclusive

---

**2.** This rule was repealed effective January 1, 1980. Numbers 27.08 to 27.25 reserved.

remedy for prosecution. The remaining issue to resolve is whether or not § 205.966 is a limiting statute, thus preventing the state from prosecuting such offenses under § 560.156.

There is no contention that the evidence would fail to support a conviction under § 560.156.

The question facing this court is whether, by the adoption of § 205.966, and the relationship of that statute to the instant case, the right of the prosecution to elect under which statute the charges could be lodged was eliminated.

Appellant argues that there is an inconsistency existing between § 205.966 and § 560.156 because the latter section is general in nature. In addition, appellant argues that since § 205.966 fails to provide that it is not an exclusive remedy, the legislature must have meant it to be exclusive and hence, to limit prosecution under that section and no other. In support of her "inconsistency argument", appellant cites *State v. Harris*, 337 Mo. 1052, 87 S.W.2d 1026 (1935). That case involved a prosecution for robbery wherein the court discussed in detail the broad rule that where one statute appears broad in nature and another is special, attempts should be made to harmonize the two. The court emphasized that where any repugnancy exists, the special statute is to be applied if that special statute is enacted preceding the general statute. It stated that if the special statute was enacted at a later date than the general statute, the special statute was to be regarded as an exception to the previous general statute.

Appellant's argument is predicated upon an assumption that § 560.156 and § 205.966 are inconsistent. This court observes no inconsistency between the two sections. Appellant further argues that under § 560.156 the value of $50.00 versus the value of $150.00 under § 205.966 (thus defining an act as a misdemeanor as opposed to a felo-

ny) further displays the inconsistency. With that argument, this court cannot agree.

The language of § 205.966 does not mandate the prosecution for welfare fraud. There is nothing to support appellant's contention that absent a declaration, the prosecution shall be limited under § 205.966, for as is found in § 205.967, prosecution for fraud is not limited pursuant to § 205.966. This court holds that had the legislature intended § 205.966 or § 205.967 to be exclusive remedies for welfare fraud, it would have been a simple matter to have declared the same.[3] The fact that an accused is charged and the evidence supports a conviction, under a statute carrying a more severe penalty, provides no defense to an accused, see *Sterling v. Wyrick*, 419 F.Supp. 80 (W.D.Mo.1976); *Ehrlich v. United States*, 238 F.2d 481 (5th Cir. 1956). The fact that substantially the same conduct may amount to an offense under another statute does not render the other statute invalid, see *State v. King*, 303 S.W.2d 930 (Mo.1957). Election to prosecute for a single act, which may constitute an offense under different statutes, is permissible, see *State v. Koen*, 468 S.W.2d 625 (Mo.1971).

Under the facts and circumstances of the instant case, this court declares the evidence supports appellant's properly being charged either under § 560.156 or §§ 205.966/205.967. Further, no inconsistency is found between §§ 205.966/205.967 and § 560.156 for the purposes of prosecution, and if the legislature intends that welfare fraud be exclusively prosecuted pursuant to §§ 205.966/205.967, it falls to the authority of the legislature to express such intent.

It then follows that since appellant was properly charged by amended information, no irregularity having been shown in the amendment to the information, and after consideration of the instructions, (nos. 4 and 5), the court committed no error in the submission of instructions nos. 4 and 5.

---

**3.** SB255 (Session Laws 1975) provides for the reenactment of § 205.966 only, and declares prosecution under § 205.966 *shall not* be an exclusive remedy. SB255 does not enact or reenact § 205.967. § 205.967 is therefore an entry made by the revisor of statutes. It follows the nonexclusive clause of § 205.966 is applicable to § 205.967.

For the foregoing reasons, point four is found to be without merit and is ruled against appellant.

In her next point, appellant alleges the trial court erred in overruling her objection to the rebuttal phase of the prosecution's final argument relating to punishment, upon the alleged failure of the state to argue punishment in the initial phase of final argument.

The limitation upon mention or reference to punishment by the prosecution, in final argument, is to prevent an unfair advantage to the state and thus render a disadvantage to an accused in regard to punishment if a conviction should result. The matter of the closing or final argument is within the discretion of the trial court and this discretion is of wide latitude, see *State v. Hooker*, 536 S.W.2d 487 (Mo.App. 1976). Reference to punishment or penalty in the initial phase of final argument suffices, see *State v. Hale*, 371 S.W.2d 249 (Mo. 1963). If the state has made reference to punishment in the initial phase of final argument, an accused cannot be heard to complain there was an unfair advantage, see *State v. Brown*, 480 S.W.2d 839 (Mo. 1972) and *State v. Thompson*, 531 S.W.2d 63 (Mo.App.1975).

Appellant cites for the court the case of *State v. Peterson*, 423 S.W.2d 825 (Mo.1968) which provides a good contrast of the acceptable and the unacceptable. In this case, the state reserved comment on punishment for the rebuttal portion of its final argument only and this was held to be error.

The record in the instant case reveals the prosecution, in the initial portion of its final argument, stated, "I want to begin now by talking to you about the instructions and the evidence in this case. And in the second part of my argument, I will talk to you about punishment." In the instant case, it should be noted that no reference to punishment other than that prescribed by the court in its instruction was made, as is shown by the following:

"MS. JOHNSON (prosecuting attorney): At the bottom of these instructions, we talk about punishment. All right. The punishment's plain for both of the Counts. What it says is simply this, that you can punish the defendant by imprisonment in the Department of Corrections, by . . . for a term fixed by you but not less than two years nor more than ten, or by confinement in the County Jail for a term fixed by you but not to exceed one year, or by a fine fixed by you but not more than $1,000.00, or by both such fine and confinement in the County Jail. Ladies and gentlemen of the jury, you are the ones who have to decide punishment. It's up to you. It is your decision. And in deciding that punishment, I believe that Mrs. Malveaux needs to go to the Division of Corrections. I'm not going to tell you how long I think she needs to go there for, but I am going to tell you that I think that there needs to be some kind of statement made by this jury that the Boone County taxpayers are not going to have to endure welfare fraud. It's your decision."

There was no error in the overruling of appellant's objection by the trial court, as applied to the facts and circumstances of the instant case, because these facts and circumstances fall directly under the rule of *State v. Brown, supra*. For the foregoing reasons, point (5) is found to be without merit and is ruled against appellant.

As her final point of error, appellant contends the trial court erred in the submission of instruction no. 11 in that said instruction failed to comply with MAI–CR 2.80, specifically by failing to provide the mandatory form regarding the imposition of punishment.

Appellant, as her argument applies to the principles contained within Rule 20.-02(c), is correct in her declaration that when there is a MAI–CR verdict form, "the MAI–CR instruction or verdict form will be given".

Such declared principle is sound but must, as in any given instance, be placed in proper relationship to the facts and circumstances

of any given case. In the instant case, under instructions nos. 4 and 5, the jury had been fully and correctly advised of its responsibility to determine punishment if there be a guilty verdict.

During the deliberations, the jury foreman made inquiry to the court, asking in what manner a determination of punishment should be communicated to the court. The court acknowledged a clerical error in the draft of the form, this was corrected, and it was immediately resubmitted to the jury.

Appellant contends a mistrial should have been declared because of the clerical error. The applicable rule on verdict forms is Rule 28.02[4]. Interpretation of that rule provides that noncompliance amounts to reversible error. The interpretation, however, and the prejudicial effect thereof, is within the province of the courts to be judicially determined, see *State v. Tettamble*, 561 S.W.2d 414 (Mo.App.1977).

The question herein is whether appellant suffered any prejudice as a result of a clerical error which, upon discovery, was immediately corrected. The record reveals the jury was aware of its role, duty and responsibility in the assessment of punishment if it returned a verdict of guilty. The matter of how to advise the court of its assessment of punishment was brought to the attention of the court by the jury. In other words, the jury requested the court to determine how it (the jury) was to convey in writing its assessment of the punishment. This led to the discovery of a clerical error which was immediately corrected. In the final analysis, considering all the attending facts and circumstances, there was no variance or deviation from MAI–CR or any violation of Rule 28.02(c). The matter was, in reality, an error of procedural and not substantive nature, and the record fails to reveal in any manner how the rights of appellant were prejudiced thereby.

Point (6) is found to be without merit and is ruled against appellant.

4. Formerly Rule 20.02.

For the foregoing reasons, the judgment herein is in all respects affirmed.

All concur.