STATE of Missouri, Respondent,

v.

Darrell SNIDER, Appellant.

No. 41317.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 5, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 12, 1981.
Application to Transfer Denied
July 14, 1981.

**134**

Linda R. Allen, Asst. Public Defender, Clayton, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

Defendant was convicted of rape and first degree robbery and sentenced to consecutive terms of twenty-five and five years respectively. His appeal alleges trial court error in the following regards: (1) failure to submit a cautionary instruction on eye-witness identification; (2) failure to declare a mistrial based on the prosecutor's comment during cross-examination and closing argument as to a separate assault by defendant; (3) failure to declare a mistrial and voir dire the jury after discovery that notes were being taken in trial by a juror. We affirm.

The prosecutrix was the assistant property manager of an apartment complex in Kinloch. On the day of the offense, a young man, later identified as defendant, entered the prosecutrix' office and complained of the condition of an apartment in the complex.[1] After being assured that required repairs would be made, the man left only to return shortly thereafter. On his re-entry to the prosecutrix' office, he immediately began beating her, knocked her to the floor and kicked her savagely. He ripped her clothes from her body, raped her and took her rings and watch. After completing his feral attack, the assailant rifled the prosecutrix' purse and the office, taking what money was there. A bizarre circumstance involving the complex security guard followed.

---

**1.** The name of the tenant and the address given for the apartment were apocryphal.

As the prosecutrix sat naked and bleeding, the guard, a former Kinloch policeman, entered the office armed with a gun and noticed the prosecutrix in her helpless condition. The assailant spoke the guard's name. The two conversed briefly and the guard allowed the assailant to leave the premises. Over the prosecutrix' complaint through bloody lips that she had just been beaten, raped and robbed, the guard did nothing to aid except to hand the unfortunate victim her clothes. Only after the maintenance man and the prosecutrix' daughter arrived were police called.

The following day, police brought a stack of photographs to the prosecutrix. She first selected the photograph of the defendant and placed it in her lap by itself after she had some recognition of it. A second photograph, which was not of the defendant, was picked out by her as being that of her assailant. In her testimony the prosecutrix noted that the defendant's photograph portrayed him with his hair braided, whereas her assailant's hair was without plaits. Police immediately rejected the second photo as being that of the assailant as his height and weight did not conform to the description given of the rapist. Three days after the attack, the prosecutrix was taken to a lineup and positively identified the defendant as her assailant. Her in-court identification of the defendant was also unequivocal.

Defendant's defense was alibi—that he was with his live-in fiancee at the time of the attack. The fiancee's testimony supported the defendant. And the security guard who had allowed the assailant to leave the scene of the rape testified that he had known the defendant all his life but that the person he had allowed to exit unmolested from the vicious assault on the prosecutrix was not the accused.

The jury chose to believe the prosecutrix and her identification of defendant as the perpetrator of the rape. He was sentenced under the Second Offender Act after careful and deliberate consideration and a lengthy opinion by the trial court in overruling defendant's motion for a new trial.

■ Defendant's first point of alleged trial court error pertains to the refusal of a long, rambling cautionary instruction on eye-witness identification. There was no error or abuse of the trial court's discretion in failing to give such an instruction. Instructions were given based on MAI-CR 2.01, 3.02, 3.20, 6.40 and 7.62, which thoroughly and properly instructed the jury on the issue of identification. The cautionary instruction urged by the defendant was unnecessary. *State v. Quinn*, 594 S.W.2d 599, 604–05 (Mo.banc 1980); *State v. Jones*, 607 S.W.2d 740, 742 (Mo.App.1980); *State v. Smith*, 607 S.W.2d 737, 739 (Mo.App.1980); *State v. McFarland*, 604 S.W.2d 613, 618–19 (Mo.App.1980).

Rebecca Johnson, defendant's fiancee, testified as an alibi witness. Defendant's second point of alleged error concerns the following colloquy during the cross-examination of Ms. Johnson and statement in closing argument.

Q. [Prosecutor] Rebecca, isn't it true that you are afraid of Darrell because he beat your mother with a board on May the 1st of this year?

MR. GARDNER: [Defendant's counsel] Your Honor—

THE COURT: I couldn't hear your question.

MR. BARRY: [Prosecutor] Your Honor, I said to Rebecca isn't it true that she is afraid of Darrell Snider because he beat her mother with a board on May 1st of this year.

A. No; I am not.

THE COURT: Is there an objection to that, counsel?

MR. GARDNER: No. I am not going to object to that question.

Q. (By Mr. Barry) Are you saying such a thing didn't happen, Rebecca?

A. No; I am not saying such a thing didn't happen. But I am not afraid of him.

Q. Did your mother make a police report about this?

MR. GARDNER: Your Honor—

THE COURT: The objection is sustained.

MR. BARRY: I don't have any other questions to the witness right now, your Honor.

During his closing argument the prosecutor made the following comment based on his cross-examination of defendant's fiancee:

Let's take a look at Rebecca Johnson for a moment. She has every *reason to* lie for Darrell Snider. It's obvious that they are very close. And does she lie for him just because she probably loves him? She lies because she is probably afraid of him because she doesn't want it to happen to her what happened to her mother. She doesn't want to be beat over the head with a stick or board.

Objection to the comment was sustained and the jury was carefully instructed to disregard the comment.

■ Defendant contends that mistrial should have been declared as the foregoing was an improper reference to the commission of a separate crime. In this case we do not find it so. And, in any event, the comment does not here serve as a basis for reversible error. Of course, prosecutors should refrain in their ardor for victory from straying into the forbidden territory of comment on separate crimes unless related to the crime charged or pertaining to the credibility issue. *State v. Williams*, 588 S.W.2d 70 (Mo.App.1979). In this case, for whatever reason, it was clearly a matter of trial strategy that defendant's attorney deliberately allowed the question put to Ms. Johnson to stand and did not request a mistrial. In these circumstances, the trial court was not guilty of abuse of discretion in not declaring a mistrial *sua sponte* based on the cross-examination. *See v. Lue*, 598 S.W.2d 133, 138 (Mo.banc 1980); *State v. Cutts*, 600 S.W.2d 75, 76 (Mo.App.1980); *State v. Williams*, 588 S.W.2d at 73.

■ With regard to the remark in closing argument, it followed the cross-examination which defense counsel had not objected to. And, again, the trial court has substantial discretion in monitoring closing argument, and its ruling that the comment was not prejudicially erroneous in the light of the careful instruction to the jury to disregard the comment was not an abuse of discretion. *State v. Murphy*, 592 S.W.2d 727, 732 (Mo.banc 1979); *State v. Harris*, 547 S.W.2d 473, 475 (Mo.banc 1977); *State v. Williams*, 588 S.W.2d at 74. This is so particularly as the prosecutor's effort was directed at showing the bias of the witness and challenging her credibility. *State v. Morgan*, 592 S.W.2d 796, 806 (Mo.banc 1980); *rev'd and remanded on other grounds*, —— U.S. ——, 101 S.Ct. 56, 66 L.Ed.2d 12 (1980), and readopted as modified in *State v. Morgan*, 612 S.W.2d 1 (Mo.banc 1981).

■ Defendant's final point relates to the disclosure that one of the jurors had been taking notes during the trial. As soon as the discovery was made, prior to jury deliberation, the trial court discreetly requested that the juror turn over the notes to it, which was done. The situation in this case is identical to that presented in *State v. Malveaux*, 604 S.W.2d 728, 733–34 (Mo. App.1980), in which it was held that there was no abuse of the trial court's discretion in refusing to declare a mistrial after a juror had been discovered taking notes with resultant action by the trial court similar to that here. There is absolutely no evidence that any prejudice was sustained by the defendant under these facts and circumstances. The trial court properly exercised its discretion in resolving the matter. *Id.* at 734.

The judgment is affirmed.

PUDLOWSKI, P. J., and WEIER, J., concur.