STATE of Missouri, Respondent,

v.

Israel TRUJILLO, Appellant.

Nos. WD 46122, WD 47710.

Missouri Court of Appeals, Western District.

Feb. 1, 1994.

Teresa Anderson, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and LOWENSTEIN and FENNER, JJ.

HANNA, Presiding Judge.

The defendant appeals from his conviction by a jury of tampering in the first degree, § 569.080.1(2), RSMo 1986, and his subsequent sentence of six years imprisonment and fine of $4,300.

The facts viewed in the light most favorable to the conviction are as follows. On September 2, 1990, Officer John Barrett of the Kansas City Police Department found a car parked in the woods. When he approached the car, he noticed a person, later determined to be the defendant, asleep in the front seat. He then returned to his patrol car to request backup and to run a computer check on the vehicle. At that time, the vehicle had not been reported stolen.

When backup arrived, Officer Barrett again approached the vehicle and woke the defendant. He asked the defendant several

questions to which the defendant responded that he had had too much to drink and had pulled off of the road to sleep. The defendant also claimed that the car belonged to someone named Valdez. During the conversation, the officer noticed that the steering column of the car was broken. When he asked the defendant how he started the car, defendant replied that he had used a screwdriver. Officer Barrett then ran a computer check on the defendant which revealed an outstanding traffic warrant and arrested him.

On September 11, the defendant was brought to the police station for questioning. At the station, Detective Bob Arnold gave the defendant a Miranda waiver form, which the defendant read aloud and signed. The defendant then made a statement. Detective Arnold later discovered that the vehicle had been stolen from Joel Smith, who testified at trial that he had not given the defendant permission to drive the car.

◼ The defendant was convicted and sentenced to six years imprisonment and a $4,300 fine. The defendants criminal appeal was suspended pending a final determination of his Rule 29.15 motion for post-conviction relief which was denied following the defendants waiver of an evidentiary hearing. The defendant filed a timely notice of appeal from the denial of his Rule 29.15 motion. However, since he has not filed a brief with this court addressing the Rule 29.15 order, the matter is deemed waived. *State v. Newman,* 839 S.W.2d 314, 317 n. 1 (Mo.App.1992). We proceed solely on the defendants direct appeal of his conviction. The defendant challenges the sufficiency of the evidence, and claims instructional error, violation of his Fifth Amendment and Miranda rights and misconduct of a juror who took notes during trial.

◼ In his first point, the defendant argues that the trial court erred in overruling his motion for judgment of acquittal at the close of the states evidence because there was insufficient evidence to support the verdict. Following the denial of that motion, the defendant produced evidence. When a defendant introduces evidence on his own behalf, he waives any error with respect to the denial of the motion of acquittal at the close

of the states evidence. *State v. Davis,* 753 S.W.2d 25, 27 (Mo.App.1988). Point denied.

◼ In his second point, the defendant argues that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence because there was insufficient evidence to support the verdict in that the state failed to prove that he drove the vehicle, an essential element of its case.

The defendant concedes that he told Officer Barrett at the scene and Detective Arnold at the police station that he had been driving the car and had decided to pull off the road to sleep because he had had too much to drink. However, the defendant, citing *State v. Charity,* 587 S.W.2d 350 (Mo. App.1979), argues that the statements he made to the police officers are not sufficient to sustain his conviction without independent proof of operating an automobile, which is an essential element of tampering in the first degree. § 569.080.1(2), RSMo 1986.

◼ To prove the corpus delicti of a crime, the state need only show proof, direct or circumstantial, that the specific crime charged was committed by someone. *State v. Duvall,* 787 S.W.2d 798, 800 (Mo.App. 1990). Independent evidence of circumstances which correspond and interrelate with the circumstances described in the confession are sufficient to prove the corpus delicti of the crime. *State v. Stimmel,* 800 S.W.2d 156, 158 (Mo.App.1990).

There is sufficient circumstantial evidence to prove that the vehicle was driven by someone. Officer Barrett testified that the steering column on the vehicle had been broken which corroborates the defendants statement to the officer that he had started it with a screwdriver. The owner of the vehicle testified that he had left the car in the parking lot of a hotel and that he had not given anyone permission to drive it. The car was found in a wooded area with the defendant in the front seat. The corpus delicti of the crime was proven. This evidence in combination with the statements the defendant made to the police was sufficient to support the con-

viction for tampering in the first degree. Point denied.

■ In his next point, the defendant argues that the trial court erred by refusing to give two instructions proffered by the defendant. First, he argues that since the primary evidence in this case was that he was found in the vehicle, it was error not to give his Instruction A, modeled after MAI–CR3d 310.08 regarding presence at or near the scene of the crime. Missouri courts, however, hold that the refusal to give MAI–CR3d 310.08 is not error except in cases of accessorial liability. *State v. Lowe–Bey,* 807 S.W.2d 132, 136 (Mo.App.1991). As the defendants case did not involve accessorial liability, the trial courts denial of the instruction was not erroneous.

■ Second, the defendant challenges the trial courts refusal to give Instruction B, modeled after MAI–CR3d 323.26 and addressing the lesser included offense of tampering in the second degree. Trial courts are obligated to give an instruction on a lesser included offense only if there is a reasonable basis in fact for finding the defendant guilty of the lesser offense and innocent of the higher offense. *State v. Vineyard,* 839 S.W.2d 686, 689 (Mo.App.1992). The crime of tampering in the second degree is unlawfully riding in another persons vehicle rather than actually driving it. § 569.090.1(2), RSMo 1986. Defendant testified, on his own behalf, that he merely found the car in the woods and got inside to sleep. There was no evidence that he rode in the vehicle while someone else drove. In the absence of any evidence to support the theory that he was riding in the car rather than driving it, the defendant was not entitled to an instruction on tampering in the second degree. Point denied.

■ In his fourth point, the defendant claims that the trial court erred in overruling his motion to suppress the statement made to Officer John Barrett. He argues that because the statement was made while he was in custody and had not been given the Miranda warning, it was inadmissible and should have been suppressed. The defendant claims he was in custody because prior to the statement, the officer had discovered via computer check that the defendant had outstanding traffic warrants and had already made the decision to arrest him.

In *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that a person must be advised of his Fifth Amendment rights prior to a "custodial interrogation." The definition of custodial interrogation has been refined over time. See *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (citing *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977)). A "[c]ustodial interrogation occurs only when the suspect is formally arrested or is subjected to arrest-like restraints." *State v. Middleton,* 854 S.W.2d 504, 516 (Mo.App.1993) (citing *State v. Schnick,* 819 S.W.2d 330, 334 (Mo. banc 1991); *State v. Feltrop,* 803 S.W.2d 1, 13 (Mo. banc), cert. denied, —— U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991)).

According to the testimony of Officer Barrett, the computer check which revealed the outstanding warrants and the decision to arrest the defendant did not occur until after the defendant had made the statement. Because the defendant was not under arrest or restrained in any way, the statement he made was not in response to a custodial interrogation. There was no violation of the defendants Miranda rights and, therefore, the trial court properly overruled the defendants motion to suppress. Point denied.

■ In his fifth point, the defendant claims that the trial court erred by overruling his motion to suppress the statement he made to Detective Bob Arnold at the police station because the waiver of his Miranda rights was not knowing and voluntary. The defendant argues that he could not comprehend the English language well enough to have understood the Fifth Amendment rights that he was waiving.

■ In determining whether a waiver of Miranda rights was voluntary, knowing and intelligent, the court must look to the totality of the circumstances. *State v. Powell,* 798 S.W.2d 709, 713 (Mo. banc 1990), cert. denied, —— U.S. ——, 111 S.Ct. 2914, 115

L.Ed.2d 1077 (1991). The question of the validity of a waiver is one of fact, and the trial courts finding will not be overturned unless clearly erroneous. Id.

Both police officers testified that they asked questions in English and the defendant responded in English. Detective Arnold testified that the defendant read the Miranda waiver form aloud in English and then signed it and that the defendant appeared to have no problems understanding what he was reading. Conflicts in the evidence and the credibility of the witnesses are matters for the trial court to resolve. Id. The trial courts determination that the defendant waived his Fifth Amendment rights knowingly and intelligently under the totality of the circumstances was not clearly erroneous. Point denied.

■ In his final point, the defendant claims that the trial court erred in failing to declare a mistrial sua sponte when it discovered that a juror had taken notes during the trial and had reviewed them at a recess. While the jurors were retiring to deliberate, the court noticed that one juror had apparently taken notes and was taking them into the jury room. The court called the juror to the bench and told him that he was not permitted to take his notes into deliberations. The court then confiscated the notes. We understand the defendants argument to be that note-taking by a juror is per se reversible error.

■ Missouri cases that have dealt with juror note-taking have not afforded a definitive response as to whether the practice is prohibited or permitted. We have not found any lower court decision that has been reversed because a juror took notes during the trial, but our decisions have avoided whether the practice is permissible or prohibited.

In *State v. Robinson,* 117 Mo. 649, 665–66, 23 S.W. 1066, 1071 (1893), the first recorded case located in which note-taking was discussed, the court decided the question on grounds other than whether the practice was permissible. The court did note that some states permitted note-taking by statute but that the question was one of divergent views. Id. at 666, 23 S.W. at 1071. In *State v.*

*Foster,* 490 S.W.2d 659, 661 (Mo.App.1973), the court stated that "under our decisions it is improper for a juror to take notes...." However, the court cited no case or statutory authority to support that proposition. In *State v. Malveaux,* 604 S.W.2d 728, 734 (Mo. App.1980), the court identified the issue as "whether or not appellant suffered any prejudice as a result of the alleged incident." The court did not discuss the propriety of note-taking but decided the case on the grounds that there was no showing that the juror made known to the other jurors what he had written and, therefore, no prejudice occurred. Id. To the same effect see *State v. Snider,* 616 S.W.2d 133, 136 (Mo.App.1981), and *State v. Johnson,* 632 S.W.2d 43, 45 (Mo.App.1982), in which the court approved the trial courts action in taking the notes away from the juror. In *Tennis v. General Motors Corp.,* 625 S.W.2d 218 (Mo.App.1981), the court observed that note-taking was permitted in twenty-seven states and nine United States Circuits and stated that note-taking was usually subject to the trial courts discretion. Id. at 224. However, the court decided the case on the grounds that there was no prejudice because the appellant made no showing that "the note-taking juror made some effective use of his notes either to himself or as a persuasive force upon his fellow jurors ..." Id. In *State v. Jones,* 661 S.W.2d 814 (Mo. App.1983), the court agreed with the Tennis case that the trial courts ruling will "usually [be] sustained as being a matter within its discretion." Id. at 816. However, the Jones court, like the court in Tennis, based its finding on the lack of proof that the notes had any persuasive effect on the jury or were used during the jury's deliberations. Id. Finally, in *Tobb v. Menorah Medical Ctr.,* 825 S.W.2d 638, 641 (Mo.App.1992), this court held that the trial courts response to note-taking is discretionary and that since there was no showing the jurors notes were made known to the other jurors and the jury was cautioned to base its decision on the evidence, there was no prejudice.

Three of the cases give the trial court the discretion to rule the question but affirm the judgment on other grounds, i.e., that the appellant failed to show prejudice. On the one hand we grant the trial court discretion

to rule the point but it is decided because there was no prejudice shown. It tends to exacerbate the existing confusion as to whether juror note-taking is permissible or prohibited.

Cases from various jurisdictions in which courts have decided the propriety of juror note-taking are collected in R.M. Weddle, Annotation, Taking and Use of Trial Notes by Jury, 14 A.L.R.3d 831 (1967 & Supp.1993). The reasons given to prohibit jurors from taking notes include: a juror who refers to notes during deliberation of a case may unduly influence the jury; the notes may be inaccurate or incomplete; a note-taking juror may emphasize one feature of the case while ignoring others and, therefore, remember a distorted view of the evidence; the note-taking itself may distract the other jurors; and the juror may miss important evidence or be less observant of the witness demeanor while taking notes. See Id. § 3[b] and cases cited therein.

None of reasons given opposing note-taking are particularly persuasive with the exception that the practice may divert a jurors attention from the activities in the courtroom. The court must be concerned about the jury's attentiveness to the witnesses demeanor because the jury determines the credibility of the witnesses. However, it is just as likely that note-taking will increase their observation and attention to the matters at hand rather than diminish their concentration. There are other factors determinative of a witness credibility; importantly, the testimony the witness gives. Also, it should not be expected that jurors will feverishly take notes. The vast majority of note-takers will more likely approach the task deliberately and sparingly jot down only important and single facts such as names, dates, figures, calculations, times, and places. The question becomes whether an individual is able to take notes while remaining attentive to the evidence. We should entrust that observation to the trial attorneys and the decision to the sound discretion of the trial judge.

The criticism that a jurors notes may be incomplete and inaccurate may just as accurately be leveled at the jurors memories.

The idea that a case may be determined on a jurors incorrect notes is no more likely than the case being determined on a faulty memory. Watkins v. State, 216 Tenn. 545, 393 S.W.2d 141, 147 (1965) (quoting W.H. Davis Die Co. v. Beltzhoover Elec. Co., 40 Ohio App. 308, 178 N.E. 418, 419 (1931)).

Note-taking is sufficiently commonplace today that we do not expect that the non-taking jurors will be unduly affected by those who take notes. Whether one juror who takes notes will unduly influence another juror may very well have been a possibility in the days when fewer individuals could read or write (which is probably the genesis of our reluctance to permit note-taking). In those times, the educated juror with notes of the evidence may have had an unfair advantage to improperly influence a less educated fellow juror. W.H. Davis Die Co., 178 N.E. at 419. It is hardly a concern today. It is doubtful that a juror who takes notes will unduly influence one who listens carefully.

The justification for note-taking is that it is a legitimate memory aid and, on that basis, the vast majority of jurisdictions hold that jurors may take notes subject to the trial courts discretion. See, e.g., United States v. Carlisi, 32 F.Supp. 479, 483 (E.D.N.Y.1940) ("There is no legal reason why notes should not be made by jurors.... Certainly the making of notes would better aid their memories and thus enable them to more intelligently consider the evidence."); Esaw v. Friedman, 217 Conn. 553, 586 A.2d 1164, 1169 (1991) ("The human memory is fallible, and notes may significantly aid in recalling evidence."); Travis v. Commonwealth, 457 S.W.2d 481, 482 (Ky.Ct.App.1970) (Juror note-taking should be encouraged.); People v. DiLuca, 85 A.D.2d 439, 448 N.Y.S.2d 730, 733–34 (1982) (Note-taking "can assist jurors in refreshing their memories and enhance their ability to recall important evidence."); Watkins, 393 S.W.2d at 147 (juror note-taking is a "commendable act."); Taking and Use of Trial Notes by Jury, 14 A.L.R.4th 831, § 3[a] and cases cited therein. See Esaw, 586 A.2d at 1167–68, for a collection of cases where note-taking is permitted.

In most every situation in which an individual attempts to learn or gain information,

**850**

note-taking is accepted and encouraged. In the courtroom, the lawyers and the judges are permitted to take notes. It does not follow that the jury members alone, the primary decision-making body and the finders of fact, should be expected to rely solely on their memories. Notes should be more reliable of details than one's memory. The ability to take notes to aid the memory is a tool which should not be forbidden based on unpersuasive reasoning and groundless fears.

We conclude from a reading of these cases that juror note-taking is not prohibited in Missouri, although it is generally thought to be impermissible. Many of the cases either recite the trial judges' comments to the juror that it is not allowed or the appellate court decision finds no prejudice which is easily interpreted to imply that the practice should not be permitted. We also conclude that whether a jury is allowed to take notes rests within the sound discretion of the trial court. We arrive at this position from a reading of the Missouri cases and based on our conclusion that the advantage of note-taking outweighs the supposed dangers of such a procedure after a critical evaluation of the arguments for and against, and our abiding faith in the good judgment of jurors to understand their function and to act on their duty responsibly. Additionally, we are not unmindful of the persuasive weight of authority supporting this practice. *Esaw* 586 A.2d at 1167. In the event that the trial court concludes that good cause dictates that note-taking should not be allowed in a particular case, it is within the courts discretion to prohibit it. The trial court should as well have the authority to allow note-taking when, in its judgment, notes would be helpful and aid the jury members to perform their duties in determining the facts. In this case the court did not err in failing to declare a mistrial sua sponte.

Judgment affirmed.

All concur.