**STATE of Missouri, Respondent,**

**v.**

**Dagvachuluun GANZORIG, Appellant.**

**ED 105358**

Missouri Court of Appeals,
Eastern District,
DIVISION THREE.

FILED: November 21, 2017

Todd R. Wells, 1720 Chouteau Avenue Unit 108, St. Louis, MO 63103, for appellant.

Joshua D. Hawley, Alexandra E. Wilson-Schoone, PO Box 899, Jefferson City, MO 65102, for respondent.

Gary M. Gaertner, Jr., Presiding Judge

## Introduction

Dagvachuluun Ganzorig (Defendant) appeals from the trial court's sentence and judgment entered upon the jury's verdict of guilty on one count of sexual abuse in the second degree. On appeal, he asserts the trial court erred in admitting out-of-court identification evidence and Defendant's written statement, and he asserts the conviction was not supported by substantial evidence. We affirm.

## Background

The State charged Defendant with one count of the class A misdemeanor of sexual abuse in the second degree, stemming from an incident in which he grabbed the vagina of H.L. (Victim) for the purpose of arousing or gratifying his sexual desire. The following occurred at trial, as relevant to the issues on appeal.

At a pretrial hearing on Defendant's motion to suppress identification evidence, Officer Chris Hildebrand (Officer Hildebrand) testified to the following. He was an officer for the St. Louis County Police Department in the Metro link Unit. On December 3, 2015, he received a report of a sexual assault at the Big Bend Metrolink station. Following Defendant's arrest, Officer Hildebrand compiled a photographic line-up with Defendant's mugshot and five other mugshots of individuals who looked similar to Defendant. Two days after the assault, Officer Hildebrand showed the photographic line-up to Victim, who identified Defendant as her assailant. Either Victim or Officer Hildebrand circled the number printed under Defendant's mugshot after Victim's identification. Prior to Victim's identification, the photographic line-up contained no markings and the

number under Defendant's mugshot in the photographic line-up was not circled. Officer Hildebrand agreed on cross-examination that he did not keep a clean copy of the photographic line-up without Defendant's name circled on it. The trial court denied Defendant's motion to suppress, finding Officer Hildebrand's testimony credible that he showed Victim a clean photographic line-up with no markings on it.

Defendant moved to suppress statements he made to the police while in custody. He asserted that because he was Mongolian and English was his second language, he was unable to intelligently and knowingly waive his constitutional rights under Miranda.[1] At a pretrial hearing on Defendant's motion to suppress his statements, St. Louis County Police Officer Michael Deck (Officer Deck) testified to the following. He interviewed Defendant at the St. Louis County Justice Center after reading Defendant his Miranda warnings. Defendant initialed each of written Miranda warnings on the waiver form after appearing to read each warning.

Officer Deck testified Defendant spoke English well and in full sentences, and they were able to engage in a two-sided conversation. Officer Deck did not have any concerns that Defendant did not understand what Officer Deck was saying. Defendant made an oral admission that he touched Victim's buttocks. When Officer Deck asked Defendant to write out a confession, Defendant did so in English. Based on Defendant's ability to converse in English, Officer Deck assumed Defendant was comfortable writing in English, and neither he nor Defendant raised any

1. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (holding that custodial interrogation by police must not occur prior to suspect being informed of his or her right to counsel and against self-incrimination).

concerns about Defendant writing in English.

Moreover, at the start of trial, Defendant waived his right to use an interpreter, stating that he had lived in the United States for fifteen years and he both spoke and read English. The trial court denied the motion to suppress Defendant's statement, finding that Defendant made his statements voluntarily, knowingly, and with the understanding of his Fifth Amendment rights.

Victim testified to the following. She was a law student at Washington University, and at approximately 5:40 a.m. on December 3, 2015, she was riding the Metro link to school to take her first exam. She was studying and did not notice anyone else on the train. She exited the train and as she was climbing up the stairs, she felt someone touch her lightly on her vagina through her sweatpants. She then felt someone touch her vagina again through her sweatpants with enough pressure to penetrate into her vagina. She looked around and saw Defendant. She did not know Defendant and had not given him permission to touch her. She confronted Defendant angrily and told him to follow her to a police station, but when she could not find one, Defendant walked away. A couple days later, a police officer came to her apartment with a photographic line-up and she identified Defendant based on her memory of his face. She stated both that there were no markings on the photographic line-up, and that after she identified Defendant, she circled the number under his picture. The State played for the jury the Metrolink surveillance video of the assault, and Victim identified herself and Defendant in the video and agreed that the video showed Defendant following her off the train and up the stairs and her reaction to him groping her.

Officer Hildebrand and Officer Deck also testified to substantially the same testimony as in the pretrial hearings, The State offered Defendant's written statement, again over Defendant's objection, and the trial court allowed the State to publish Defendant's statement to the jury. In his written statement, Defendant presented some of his background, including that someone had recently run over his leg, breaking his "metatarsal bone," before stating: "That morning I toched [sic] (grabbed) one lady she was in walk up to the steps, I'm appoligize [sic] even I can't describe in a word which is what I did was wrong. As a man I take it, and I understand that consequences [sic] very deeply. Please jude [sic] you honor give a chance and forgive for my thoutless [sic] steps."

Defendant testified in his own defense to the following. He was riding the Metrolink because he was homeless. He saw Victim and followed her, hoping that she would be receptive to his request for money. He touched her to get her attention and she got angry, which confused and scared him. After he was arrested, he made a written statement to the police because he was fearful of the police and felt pressured to make a statement. On cross-examination, he agreed that the Metrolink surveillance video showed him entering a train right after Victim, sitting near her, and walking directly behind Victim after she exited the train and walked up the stairs. When the State asked Defendant to confirm that the video showed his face turned in Victim's direction while they were both on the train, Defendant stated he did not see her on the train.

In closing argument, the State argued that Defendant's testimony that he was just trying to get Victim's attention was not credible, in that he did not speak to her to get her attention and he did not touch her shoulder or elbow; rather, he

intentionally touched her vagina twice without her permission. The defense in its closing argument, portrayed the touches as "a social faux pas" or an accident that Victim "took ... the wrong way." Defense counsel further argued there was no evidence that Defendant was attracted to Victim or was acting with the purpose of gratifying his own sexual desire. In rebuttal, the State argued there was no reason for a man to grab a woman's vagina other than to gratify his own sexual desire, and that the jury must use its common sense to make a reasonable inference from the facts.

The jury found Defendant guilty of sexual abuse in the second degree. Defendant moved for a new trial, which the trial court denied. The trial court sentenced Defendant to six months' imprisonment in the Department of Justice Services in St. Louis County. This appeal follows.

### Discussion

Defendant raises three points on appeal. He challenges the trial court's denial of his motion to suppress the out-of-court identification, denial of his motion to suppress his written statement, and denial of his motion for new trial in which he asserted the State failed to prove Defendant acted with the purpose of gratifying his own sexual desire. We address each point in the order presented.

### Point I

■ In his first point on appeal, Defendant argues the trial court abused its discretion in denying his motion to suppress the out-of-court identification because it was impermissibly suggestive, in that the evidence suggests the photographic line-up was pre-circled for the witness. This argument fails.

■ The trial court's discretion in determining the admissibility of evidence is broad, and we will not interfere with that discretion unless the trial court's ruling was clearly erroneous and not supported by substantial evidence. State v. Johnson, 207 S.W.3d 24, 42 (Mo. banc 2006); State v. Moorehead, 438 S.W.3d 515, 519 (Mo. App. E.D. 2014), "The test for the admission of identification testimony is two-pronged." State v. Thomas, 407 S.W.3d 190, 195 (Mo. App. E.D. 2013). We first consider whether the out-of-court identification procedure was impermissibly suggestive, Only if the answer is yes do we then consider the second prong, which is to measure the impact the suggestive procedure had upon the reliability of the identification made by the witness. Id. An out-of-court identification can be unduly suggestive if the identification proceeds not from the witness's recollection of first-hand observations, but from the procedures or actions of the police conducting the identification. State v. Floyd, 347 S.W.3d 115, 125 (Mo. App. E.D. 2011). If the procedure was not unduly suggestive, the out-of-court identification is admissible at trial. Moorehead, 438 S.W.3d at 520.

Here, Officer Hildebrand testified that he presented Victim with an unmarked copy of the photographic line-up. The trial court found this testimony credible, and we defer to the trial court's credibility determinations in a motion to suppress. State v. Woodrome, 407 S.W.3d 702, 706 (Mo. App. W.D. 2013). Moreover, Victim similarly testified that when she identified Defendant from the photographic line-up, there were no markings on the photographic line-up suggesting any particular person as the perpetrator. Rather, she testified that she positively identified Defendant from her recollection of first-hand observations, whereupon she circled the number under Defendant's photograph. There is no evidence that the procedure used for the out-of-court identification was

impermissibly suggestive. See Floyd, 347 S.W.3d at 125. Defendant's suggestions to the contrary are explicitly refuted by the record.

■ Without a record of suggestive identification procedures, we will not consider Defendant's challenge to the reliability of Victim's out-of-court identification, See Moorehead, 438 S.W.3d at 520; Thomas, 407 S.W.3d at 195. The trial court did not abuse its discretion in denying Defendant's motion to suppress the out-of-court identification. Point denied.

## Point II

■ In his second point on appeal, Defendant asserts the trial court erred in denying his motion to suppress the written statement he made while in custody because the waiver of his Miranda rights was not knowing and intelligent due to his difficulties in understanding English. We disagree.

We review the trial court's ruling on a motion to suppress a statement for whether there was evidence to support the ruling, and we will affirm unless the ruling was clearly erroneous. State v. Norman, 431 S.W.3d 563, 568 (Mo. App. E.D. 2014). We do not reweigh the evidence, and will not reverse if the ruling was plausible in light of the entire record. Id. The trial court is tasked with resolving conflicts of evidence and with determining the credibility of witnesses, and we defer to the trial court's determinations in those matters unless they are clearly erroneous. See State v. Trujillo, 869 S.W.2d 844, 847-48 (Mo. App. W.D. 1994).

■ "A statement obtained from an accused during custodial interrogation is admissible only if the State establishes by a preponderance of the evidence that the accused validly waived the privilege against self-incrimination and the right to counsel." State v. Sparkling, 363 S.W.3d 46, 49 (Mo. App. W.D. 2011) (citing Colorado v. Connelly, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)). This inquiry has two aspects: first, the waiver must be voluntary, in that it was a deliberate choice rather than the result of intimidation, coercion, or deception; second, the waiver must be knowing, in that it was made with full awareness of both the nature of the rights being waived and the consequences of the decision to waive those rights. Id. at 50. The trial court should consider the totality of circumstances in determining whether the accused's waiver was voluntary and knowing. Trujillo, 869 S.W.2d at 848.

Here, Defendant only challenges the knowingness and intelligence of his waiver, asserting that the State failed to prove he understood English sufficiently to understand the waiver. We disagree. Rather, Officer Deck testified that Defendant spoke English well and in full sentences, they were able to engage in a two-sided conversation, and Officer Deck did not have any concerns that Defendant did not understand what rights he was waiving. Moreover, when Defendant wrote his statement, he voluntarily wrote it in English using words like "metatarsal bone," "consequences" and "thoughtless," suggesting an objective proficiency with the English language, despite multiple spelling and grammatical errors. This record was sufficient for the State to meet its burden to prove Defendant knowingly and intelligently waived his rights to counsel and against self-incrimination before making his statement. See id. (testimony from officers that defendant spoke in English and appeared to have no problems understanding waivers was sufficient to establish defendant knowingly and intelligently waived his Fifth Amendment rights). Further, prior to the hearing on the motion to suppress, the trial court questioned Defendant about his proficiency in English, and De-

fendant stated he had lived in the United States for fifteen years, he both read and spoke English, and he wished to waive his right to an interpreter. Under our standard of review, we defer to the trial court's determinations in matters of fact and credibility, and if, as here, the entirety of the evidence plausibly supports the trial court's determination, we will not substitute our judgment for that of the trial court. See Norman, 431 S.W.3d at 568; Trujillo, 869 S.W.2d at 848.

The trial court's determination that Defendant's waiver was knowing and intelligent was not clearly erroneous. Point denied.

### Point III

■ In his third and final point on appeal, Defendant argues the trial court erred in denying his motion for a new trial because the State failed to prove beyond a reasonable doubt that Defendant acted with the purpose of gratifying his own sexual desire and thus no reasonable trier of fact could have found him guilty beyond a reasonable doubt. We disagree.

We review challenges to the sufficiency of the evidence supporting a criminal conviction for whether the State presented sufficient evidence at trial from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt of all the essential elements of the crime. State v. Nash, 339 S.W.3d 500, 508-09 (Mo. banc 2011). We accept as true all evidence and inferences favorable to the judgment, and disregard all negative evidence and inferences. State v. McIntyre, 63 S.W.3d 312, 315 (Mo. App. W.D. 2001).

■ A person commits the offense of sexual abuse in the second degree if he or she purposely subjects another person to sexual contact without that person's con-

sent. Section 566.101.[2] Section 566.010(3) defines "sexual contact" as any touching of another person's genitals, either directly or through the clothing, "for the purpose of arousing or gratifying the sexual desire of any person." Because direct evidence of a defendant's intent is rarely available, the State most often proves intent through circumstantial evidence. State v. Greenlee, 327 S.W.3d 602, 618 (Mo. App. E.D. 2010). In assessing whether a defendant touched another "for the purpose of arousing or gratifying the sexual desire of any person," a jury may infer intent from the surrounding circumstances or from "the sexual nature of the act itself." McIntyre, 63 S.W.3d at 315; see also Greenlee, 327 S.W.3d at 618.

Here, the evidence showed that Defendant targeted and followed Victim, who was a stranger to him: he followed her onto the Metro link train, watched her on the train, and followed her off the train and up the stairs. Then, approaching her from behind, he not only touched Victim's vagina once, but he touched her vagina twice and with enough force to actually penetrate her vagina through her clothing. Touching a woman's vagina is an inherently sexual act, which can alone serve as evidence of Defendant's intent to arouse or gratify either his or her sexual desire. See McIntyre, 63 S.W.3d at 315 (evidence that defendant touched victim in his groin area over his clothes while they were alone was sufficient in itself to support trial court's finding that contact was done for purpose of arousing or gratifying sexual desire, due in part to "the sexual nature of the act"). Further, Defendant himself admitted he touched Victim's "buttock," which he recognized was wrong. See id. (defendant's admission to police that his action was

---

**2.** All statutory references are to RSMo. (cum. supp. 2016), unless otherwise indicated.

inappropriate served as evidence of his intent to arouse or gratify sexual desire).

Moreover, the fact that Defendant touched Victim not once but *twice*, and that the second time was with enough force to penetrate her vagina through her sweatpants belies his claim of an accident. While Defendant's theory of defense was that he simply reached out to get Victim's attention and that any touch to her vagina was an accident that she took "the wrong way," the jury is free to believe or disbelieve any testimony of a witness when considering the fact, circumstances, and other testimony in the case. Nash, 339 S.W.3d at 509. The State specifically challenged Defendant's theory of defense by arguing that if he was in fact merely trying to get Victim's attention, he would have said something to alert her or would have touched her shoulder or arm, rather than anywhere near her vagina. By its verdict, the jury agreed with the State. This Court does not act as a super-juror, but we defer to the judgment of the trier of fact. Id.

The evidence presented at trial was sufficient from which the jury could have found beyond a reasonable doubt that Defendant's conduct was intentional and for the purpose of sexual gratification. Thus, the trial court did not err in denying Defendant's motion for a new trial. Point denied.

### Conclusion

The judgment and sentence of the trial court is affirmed.

Robert M. Clayton III, J., concurs.

Angela T. Quigless, J., concurs.