STATE of Missouri, Plaintiff-Respondent,

v.

Luke Lamar LIKER, Defendant-Appellant.

## No. SD 34829

Missouri Court of Appeals,
Southern District,
Division Two.

Filed: January 22, 2018

Attorney for Appellant: Carol D. Jansen of Columbia, MO.

Attorney for Respondent: Josh Hawley, Atty. Gen., Daniel N. McPherson, Asst. Atty. Gen., of Jefferson City, MO.

JEFFREY W. BATES, J.

Following a jury trial, Luke Liker (Defendant) was convicted of three counts of the class B felony of possession of child pornography and one count of the class C felony of possession of child pornography. *See* § 573.037.[1] Presenting three points of

1. All statutory references are to RSMo Cum. Supp. (2008). All rule references are to Missouri Court Rules (2017).

error, Defendant contends: (1) the trial court abused its discretion in admitting "the terms 'preteen,' 'child' and 'kiddy,' which indicated an alleged age of the individuals portrayed" in the video files for which Defendant was charged; (2) the trial court abused its discretion in overruling Defendant's motion for a mistrial or new trial following a juror's disclosure after trial that she had taken notes and shared them with other jurors during deliberations; and (3) the judgment erroneously described the sentence on the last count involving possession of a still image of child pornography as a class B felony when that offense was only a class C felony. Finding merit in Defendant's third point, we remand with directions to correct the judgment to reflect that Defendant's fourth conviction was of the class C felony of possession of child pornography. In all other respects, we affirm.

Defendant does not contest the sufficiency of the evidence to support his convictions. "We consider the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict, and we reject all contrary evidence and inferences." *State v. Campbell*, 122 S.W.3d 736, 737 (Mo. App. 2004); *see State v. Johns*, 34 S.W.3d 93, 103 (Mo. banc 2000). Viewed from that perspective, the following facts were adduced at trial.

Between May 17 and June 21, 2009, Defendant was staying with Stephanie Burtis (Burtis) and her then-husband in an apartment in Springfield. According to Burtis, Defendant had internet access and used his Compaq laptop computer (the Compaq) every day. Defendant later purchased a new computer and sold the Compaq to Burtis' neighbor, Shannon Tittle (Tittle). He and Defendant had become friends.

While visiting Defendant a few days later, Tittle noticed what he believed was child pornography on Defendant's new computer. When Tittle asked about it, Defendant admitted he had pornography on the new computer and showed Tittle some images. Tittle became concerned that the Compaq he bought from Defendant might also have pornography on it. Tittle checked the Compaq and saw files that appeared to contain child pornography. The police were notified, and Tittle gave them the Compaq. A forensic examination of the Compaq revealed approximately 3,000 movie files containing child pornography, plus 40 or more still images depicting child pornography.

Defendant was eventually charged with five counts of possession of "child pornography of a person less than eighteen years of age[.]"[2] The first four counts were each charged as a class B felony for possessing a motion picture, and the fifth count was charged as a class C felony for possessing an image.

The technician who performed the forensic examination, Christopher Woods (Woods), testified that a file-sharing program called Limewire was installed on the Compaq. Limewire is a common program used for obtaining child pornography on the internet. The Compaq also contained a folder with Defendant's name on it that was used to access some of the child pornography. The State published portions of four videos and one still image to the jury. The file names associated with the videos contained terms that are commonly associated with child pornography.

**2.** The second amended information originally charged Count 1 as promoting child pornography in the first degree, a class B felony, in violation of § 573.025. By the time of trial, however, Count 1 had been amended to charge the class B felony of possession of child pornography.

Defendant did not testify or present any evidence. His defense was that it was Tittle who possessed the child pornography. The jury found Defendant guilty of all five counts; four counts of the class B felony of possession of child pornography for possessing videos, and one count of the class C felony of possession of child pornography for possessing a still image. In the sentencing phase, the jury recommended terms of seven years' imprisonment on each count, plus a fine on the class C count.

Prior to sentencing, the trial court set aside the jury's verdict on Count 4, one of the class B counts, on the basis that it could not be clearly determined that the person depicted in the video was under the age of 18. The court imposed the seven-year sentences recommended by the jury on each of the remaining counts and ordered that they be served concurrently. The court also imposed a $1,000 fine on the class C count. This appeal followed. Additional facts necessary to the disposition of the case will be included below as we address Defendant's three points.

### Point 1

■ Defendant's first point contends the trial court erred in admitting testimony containing "the terms 'preteen,' 'child' and 'kiddy[.]' " A trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion. *State v. Blurton,* 484 S.W.3d 758, 769 (Mo. banc 2016). The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. *Id.*; *State v. Winfrey,* 337 S.W.3d 1, 5 (Mo. banc 2011). The following facts are relevant to this point.

Defendant filed a third motion in limine that sought to preclude any comment or testimony concerning his possession of images of child pornography that were not charged. The trial court ruled that the State could discuss the total number of files found, but had to be cautious in using file names and could not tell the jury the age that was contained in those file names.

When Woods was asked if there were words or phrases commonly associated with child pornography, Defendant objected, based in part on the motion in limine. Defense counsel explained, in relevant part:

> Judge, my objection is that it's going towards my motion in limine as far as it sounds like he is definitely going to get into the jargon of file names or files themselves. "PTHC" is mainly, I think, associated with this case, and it definitely sounds like that is where he is going with the question asked. I believe that you said that he cannot use "PTHC" and the code names, I guess, to put it correctly.

The prosecutor countered, clarifying:

> Actually, Your Honor, I have written down—and we can go back and look at the record—that you specifically told me I was allowed to get in phrases that were commonly associated. The one thing that I was not—and I remember it because this was very important to our case. You specifically limited us from the age portion. But I did bring up that, you know, those common phrases do go to knowledge and intent for downloading, and I have that you specifically allowed me to do those parts of the titles as long as I did not mention age.

The court stood by its previous ruling that the names of the files could be mentioned without any reference to ages. The court granted Defendant a continuing objection on the issue.

Woods went on to testify that certain terms are used in naming child pornogra-

phy files in order to alert the user to the content of the file. Woods testified to some examples:

> Some of the examples that I distinctly remember would be PTHC, which is an acronym for preteen hardcore, PTSC, which is preteen soft core, NYMFANT, which is trying to combine the words "nympho" and "infant," and things of that nature.

The State published portions of four videos and one still image to the jury. The full file names were not read to the jury, but Woods identified terms in the title that are commonly associated with child pornography. The first video contained the terms "pedo," "child lover," and "kiddy." The second video contained the terms "hussyfan" and "PTHC." The third video contained the terms "PTSC" and "PTHC." The fourth video contained the term "PTHC." Defendant's objection was renewed in his motion for new trial.

To be admissible, evidence must be both logically and legally relevant. *State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002). Evidence is logically relevant if the evidence tends to make the existence of a material fact more or less probable. *Id*. Evidence is legally relevant if its benefits outweigh its costs, including unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness. *Id*.

Defendant argues that the challenged testimony was inadmissible because it was neither logically nor legally relevant to the jury's determination of the age of the individuals in the video. According to Defendant, "testimony of the terms 'preteen,' 'child' and 'kiddy,' which indicated an al-leged age of the individuals portrayed in the four video files . . . confused and misled the jury by suggesting that the jury could rely on the ages in the titles to determine the ages of the individuals in the videos" rather than from "viewing the videos[.]" Based on this premise, Defendant argues the trial court abused its discretion in admitting the testimony. We disagree.

■ "A person commits the crime of possession of child pornography if, knowing of its content and character, such person possesses any child pornography of a minor under the age of eighteen or any obscene material portraying what appears to be a minor under the age of eighteen." § 573.037.1.[3] "Therefore, the elements of the crime of possession of child pornography require a defendant to: (1) have knowledge of the content and character of and (2) possess (3) obscene material (4) that has a child as a participant or portrays what appears to be a child as an observer or participant of sexual conduct." *State v. Kamaka*, 277 S.W.3d 807, 813 (Mo. App. 2009); *see State v. Dean*, 382 S.W.3d 218, 222 (Mo. App. 2012) (State must prove these elements beyond a reasonable doubt); *see also State v. Clemons*, 643 S.W.2d 803, 805 (Mo. banc 1983) (the State has the burden of "convincing the jury beyond a reasonable doubt as to each and every element of the charged offense"). Thus, in addition to proving age of the individuals portrayed in the video, the State had to prove, *inter alia*, that Defendant knew of the content and character of the materials he possessed. *Kamaka*, 277 S.W.3d at 813; *see State v. Quick*, 334 S.W.3d 603, 619 (Mo. App. 2011) (statute

---

**3.** After later amendments in 2009, 2013 and 2014, § 573.037 currently provides that "[a] person commits the offense of possession of child pornography if such person knowingly or recklessly possesses any child pornography of a minor less than eighteen years of age or obscene material portraying what appears to be a minor less than eighteen years of age". § 573.037.1 RSMo (2016).

attributes "the knowing mental state to the 'content and character' of the child pornography"); *see also* **United States v. Kelley**, 861 F.3d 790, 796-97 (8th Cir. 2017) (government had to prove beyond a reasonable doubt that defendant "knowingly" possessed child pornography).

Here, Defendant's argument concerning the relevancy of the challenged terms to establish age is misdirected. The State's position was that the challenged terms were relevant to establish the element of knowledge—*i.e.*, that Defendant possessed the child pornography "knowing of its content and character[.]" § 573.037.1. The file names in the case at bar are relevant for the purpose of establishing this intent element because the names indicate "the nature of the images one would be likely to find on the files." **Quick**, 334 S.W.3d at 619; *see* **Kelley**, 861 F.3d at 797 (jury could reasonably infer from sexually explicit titles on video files that any person would be aware of the content of those files). Moreover, the jurors saw all four videos and the still image. That gave them the opportunity, as part of their fact-finding duties, to decide whether the file names accurately described the videos or image.

■ Defendant does not address the relevancy of the challenged terms to establish the knowledge element.[4] Because the terms "preteen," "child" and "kiddy" were relevant in establishing that knowledge element, we find no abuse of discretion in admitting testimony about those terms. *See, e.g.*, **Quick**, 334 S.W.3d at 608-11 (no

abuse of discretion in admitting and publishing video, the title of which included "Pthc" and "Kiddy"). Point 1 is denied.

*Point 2*

■ Defendant's second point contends that the trial court erred in overruling Defendant's motions for a mistrial and a new trial following a juror's disclosure that she had taken notes throughout the trial and shared them with other jurors during deliberations. "A mistrial is a drastic remedy to be exercised only in those extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed." **State v. Ward**, 242 S.W.3d 698, 704 (Mo. banc 2008). When considering juror misconduct, the trial court has wide discretion in deciding whether to declare a mistrial, and a trial court's ruling as to the evidence of juror misconduct will not be disturbed absent a finding of abuse of discretion. **State v. Dunn**, 21 S.W.3d 77, 83-84 (Mo. App. 2000). The key consideration is the extent to which the defendant's right to a fair trial has been prejudiced. *Id.* at 84. "Juror misconduct during a felony trial requires reversal for a new trial, unless the State affirmatively shows that the jurors were not subjected to improper influences as a result of the misconduct." **State v. Thompson**, 955 S.W.2d 828, 830 (Mo. App. 1997). "The burden does not shift to the State to disprove improper influence, however, until juror misconduct is actually established." *Id.*; **Dunn**, 21 S.W.3d at 84. The following facts are relevant to this point.

4.  Defendant does address the State's argument that the terms were admissible to show an "absence of mistake[.]" Because absence of mistake was not his defense at trial, he argues that the terms were not logically relevant. In the context of this particular offense, however, absence of mistake is closely related to the knowledge element. "As the state must sustain its burden it should not be unduly limited as to the manner of satisfying this

quantum of proof." **Clemons**, 643 S.W.2d at 805. Even a defense stipulation to the existence of an element does not take away the right of the State to offer, and to have received, evidence which is relevant to that element. *Id.*; *see also* **State v. Snowden**, 285 S.W.3d 810, 817 (Mo. App. 2009) ("This court is unaware of any requirement that an issue be actively disputed in order for evidence to be presented on that issue during trial.").

■ The jurors were never told by the court that they could not take notes during trial. None of the instructions provided the jurors with any guidance about whether they should take notes during trial. The fourth paragraph of Instruction No. 1, which was based upon MAI-CR 3d 302.01, merely stated that:

It is important for you to understand that this case must be decided only by the evidence presented in the proceedings in this courtroom and the instructions I give you. The reason for this is that the evidence presented in court is reviewed by the lawyers and the court, and the lawyers have the opportunity to comment on, or dispute, evidence presented in court. If you obtain information from other places, the lawyers do not have the opportunity to comment on or dispute it. Fairness and our system of justice require giving both sides the opportunity to view and comment on all evidence in the case. It is unfair to the parties if you obtain information about the case outside this courtroom.

This portion of the criminal instruction, however, is included whether or not note-taking is permitted. *See* MAI-CR 3d 302.01 n.4.[5] Nor did the trial court observe any juror taking notes during trial. Instead, the jury sentencing phase of the trial had concluded before the judge first learned that one juror had taken notes throughout the trial. On the court's own motion, it scheduled a hearing prior to sentencing to make a record that the court had spoken to the jurors after the trial and learned of the matter.

At the hearing, the judge told counsel that "one of the jurors just really out of the blue stated to me, 'Judge, I took notes throughout the trial, and I shared them with everybody during deliberations. They were very helpful.' " The juror pulled out a steno pad, but the judge did not look at it. The judge did not inquire further about the issue. Because the juror was never observed to be taking notes during the trial, the judge was unsure whether she took the notes during recesses or at the end of the day. The purpose of the court's announcement was to bring the matter to the parties' attention so Defendant could decide whether to include the issue in his motion for new trial.

Defense counsel then requested a mistrial. The court advised counsel to file a written motion on the matter. Defendant filed both a motion for a mistrial and a motion for a new trial, which included a claim of error based on the juror note-taking incident.

Thereafter, the court denied both motions. The court decided that no juror misconduct occurred because jurors were nev-

---

5. If the trial court allows jurors to take notes, MAI-CR 3d 302.01 requires the addition of the following paragraphs to Instruction No. 1:
Each of you may take notes in this case but you are not required to do so. I will give you notebooks. Any notes you take must be in those notebooks only. You may not take any notes out of the courtroom before the case is submitted to you for your deliberations. No one will read your notes while you are out of the courtroom. If you choose to take notes, remember that note-taking may interfere with your ability to observe the evidence and witnesses as they are presented.

Do not discuss or share your notes with anyone until you begin your deliberations. During deliberations, if you choose to do so, you may use your notes and discuss them with other jurors. Notes taken during trial are not evidence. You should not assume that your notes, or those of other jurors, are more accurate than your own recollection or the recollection of other jurors.
After you reach your verdict, your notes will be collected and destroyed. No one will be allowed to read them.

er instructed that they could not take notes. Additionally, the trial was neither long nor complex. The crux of the trial was witness credibility, which was something each juror had the opportunity to determine after viewing the witnesses. The court found that one juror's taking of notes and sharing them with at least some members of the jury did not create prejudice sufficient to warrant the granting of a new trial. This appeal followed.

Defendant's point first asserts that "the juror's use and distribution of her notes during deliberations" constituted juror misconduct because she "violated the trial court's instruction that jurors must be governed in their deliberations by their memory of the evidence presented at trial[.]" According to Defendant, the misconduct was prejudicial because "without proper guidance the jury may have improperly viewed her notes as evidence or as more important than their own memory of the evidence at trial" and further, that "the trial court failed to individually poll the jury to determine whether the juror's notes were prejudicial[.]" Based on these assertions, Defendant argues that the trial court abused its discretion in overruling his motions for mistrial and new trial. We disagree.

■■■ We begin by noting that the decision whether or not to allow the jury to take notes "lies purely within the discretion of the trial court." *State v. Taylor*, 134 S.W.3d 21, 28 (Mo. banc 2004); Rule 27.08. In the case at bar, the trial court neither expressly allowed nor prohibited the jurors from taking notes. Moreover, nothing in pattern instruction MAI-CR 3d 302.01 informed the jurors that they were not permitted to do so. The taking of notes by a juror without express permission from the trial court is not *per se* reversible error in Missouri. *See State v. Trujillo*, 869 S.W.2d 844, 848-50 (Mo. App. 1994).

We agree with the trial court that no juror misconduct occurred because the court never told the jurors that they could not take notes. The fourth paragraph of Instruction No. 1, upon which Defendant relies, is given in every case whether or not note-taking is allowed. *See* MAI-CR 3d 302.01 n.4. Further, notes represent a memorialization of the juror's recollection of the evidence as presented. *See Trujillo*, 869 S.W.2d at 850 (observing that note-taking is justified as a legitimate memory aid). The trial court concluded that note-taking in this case did not violate the portion of Instruction No. 1 requiring the jurors to be guided in their deliberations by the evidence as they remembered it.

Defendant's reliance on *State v. Robinson*, 484 S.W.3d 862 (Mo. App. 2016) is misplaced. There, the trial court authorized note-taking, but failed to give the mandatory instruction on note-taking set forth in MAI-CR 3d 302.01. The case at bar involves neither authorized note-taking nor a claim of instructional error. Because Defendant has failed to establish juror misconduct, the burden did not shift to the State to disprove influence. *Dunn*, 21 S.W.3d at 84. Although we need not address prejudice to dispose of this point, we nevertheless agree with the trial court's determination that the note-taking in this case did not create prejudice sufficient to warrant the granting of a new trial. As the court observed, the trial was neither long nor complex. The defense strategy was simple: the videos and still image were downloaded by Tittle, not Defendant. The crux of the trial was witness credibility, which each juror had the opportunity to determine after viewing the witnesses. Further, the court did not even learn of the note-taking until well after the jury rendered its verdict. *See, e.g., State v. Jones*, 661 S.W.2d 814, 816 (Mo. App. 1983) (after the jury rendered its verdict,

it was too late to show prejudice; jurors may not impeach a verdict once it is rendered). Accordingly, we find no abuse of discretion in the trial court's decision to overrule Defendant's motion for a mistrial and a new trial. Point 2 is denied.

### Point 3

Defendant's third point contends that the judgment contains an error with respect to his conviction for possession of one still image of child pornography. Defendant argues that he was charged with, convicted of, and orally sentenced for this offense as a class C felony, but the judgment erroneously describes the offense as a class B felony. Defendant seeks remand to correct the written judgment. The State agrees with this request.

Based upon our review of the record, Defendant is entitled to the relief he seeks. Failure to accurately record Defendant's conviction was a clerical error correctable *nunc pro tunc*. *State v. Woods*, 357 S.W.3d 249, 256 (Mo. App. 2012); *see also* Rule 29.12(c) (permitting a trial court to correct such clerical errors in the judgment that obviously are a result of oversight or omission). Remand is appropriate. *Woods*, 357 S.W.3d at 256. Point 3 is granted.

We remand with directions that the trial court correct the written judgment to reflect that Defendant's conviction for possession of one still image of child pornography was a class C felony. In all other respects, the judgment and convictions are affirmed.

NANCY STEFFEN RAHMEYER, C.J./P.J.—CONCUR

WILLIAM W. FRANCIS, JR., J.—CONCUR