

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110653 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| v. | ) | Cause No. 18AB-CR00217-01 |
| | ) | |
| DAVID F. SCHNEIDER, | ) | Honorable Craig E. Hellmann |
| | ) | |
| Appellant. | ) | Filed: October 31, 2023 |

### Introduction

David F. Schneider ("Defendant") appeals from the judgment upon his conviction following a jury trial for four counts of child molestation in the first degree and one count of attempted child molestation in the first degree. On appeal, Defendant argues the trial court erred in not granting a mistrial and in denying his motion for new trial for juror misconduct. Defendant also challenges the trial court's denial of his motion for judgment of acquittal on all counts. Defendant additionally argues the trial court erred in allowing the State to proceed on the Second Substitute Information, which denied Defendant the opportunity to adequately defend himself. Finally, Defendant argues the trial court erred in submitting jury instructions that fatally varied from the charging documents. We affirm the judgment of the trial court.

### Factual and Procedural History

1

*Facts*

Viewed in the light most favorable to the verdict, *see State v. Bracy*, 670 S.W.3d 159, 166 (Mo. App. E.D. 2023), the evidence adduced at trial is as follows.

Victim 1[1]

Victim 1 began gymnastics at Kids in Motion in 2009. Around 2011 to 2012, Victim 1 met Defendant, an assistant gymnastics coach, at Kids in Motion. As an assistant coach, Defendant helped Victim 1 stretch. Part of the stretching involved the oversplits stretch. The oversplits stretch required the gymnast to set her front foot up on a platform and then do the splits. Most coaches assisted with the oversplits stretch by straightening the gymnasts' legs and pushing down on the gymnasts' hips to create a deeper stretch.

When Defendant assisted Victim 1 with the oversplits stretch, however, Defendant grabbed underneath Victim 1, twisted her hips, and pushed her hips down. During this stretch, Defendant's right hand grabbed underneath on the backside, and his middle finger slid into Victim 1's shorts, underneath Victim 1's leotard, and touched Victim 1's genitals. Each time Defendant touched Victim 1's vagina, Defendant said "Sorry, hun." No other coaches ever grabbed Victim 1 this way.

Victim 1 demonstrated to the jury on a doll how Defendant molested her. Victim 1 estimated Defendant inappropriately touched her more than ten times, and she was 100% sure he touched her vagina. No other coaches made Victim 1 feel uncomfortable while stretching or put their fingers or hands underneath Victim 1's spandex shorts.

Victim 2

---

[1] The personal identifying information of the victims and witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

2

Around Summer 2014, Defendant coached Victim 2. When doing the oversplits stretch, Defendant "took his fingers down the top of [Victim 2's] shorts and underneath [her] leotard and touched [her] vagina." Victim 2 demonstrated to the jury on a doll how Defendant molested her. Victim 2 indicated Defendant's fingers were underneath her shorts and leotard. The touching involved skin-to-skin contact. Victim said this happened three, maybe four times. None of Victim 2's other coaches ever put their fingers under her clothing.

Victim 2 disclosed each incident to her mother. Victim 2 stated she did not like when Defendant put her in the oversplits because Defendant touched her "down there in the privates." The week after the first incident, Victim 2 disclosed again that Defendant touched her "private parts" when doing the oversplits stretch. After a third incident, Victim 2 told her mother she did not want to do the oversplits with Defendant anymore because Defendant touched her on her vagina.

<u>Victim 3</u>

Around 2012, Defendant began coaching Victim 3. When Defendant assisted Victim 3 with the oversplits stretch, Defendant would "have his left hand on [her] lower back and . . . slide [his other hand] down [Victim 3's] leg and go up . . . under the shorts, but over the leotard." Once Defendant had his hand under Victim 3's shorts, he would "grab the area of [Victim 3's] vagina" over the leotard. Victim 3 demonstrated on a doll for the jury. Victim 3 testified none of her other coaches ever made her feel uncomfortable or ever stuck their fingers underneath any of her clothing, either intentionally or accidentally.

Victim 3 initially disclosed the molestation to Victim 4. Then Victim 3 saw Defendant molest Victim 4 the same way. This occurred when Victim 4 was right next to Victim 3 while they were doing the oversplits stretch.

3

After her disclosure to Victim 4, Victim 3 disclosed the molestation to her parents. After seeing a news report about sexual harassment on television and hearing her mother talk about sexual harassment, Victim 3 told her parents "it was like when [Defendant] got fired for sticking his hands up our shorts doing the splits." Victim 3 told her mother that when she did the oversplits stretch, Defendant would "stick his hand up under [Victim 3's] shorts and slip it down in between her legs," touching her crotch area. In January 2018, Victim 3 disclosed the molestation to her school counselor. The counselor hot-lined the allegation, and a criminal investigation began.

### Victim 4

Around 2012 or 2013, Defendant began coaching Victim 4. Defendant would "push [her] down, he would take one of his hands . . . and go under with his hand from the bottom under [her] shorts and leotard." Once Defendant had his hand under her shorts and leotard, Defendant touched Victim 4's genitals. Victim 4 demonstrated with a doll. Victim 4 stated this happened multiple times. Victim 4 also saw Defendant molesting Victim 3 when they were stretching. Victim 4 was molested first, then Victim 3 was molested right after her. No other coach made Victim 4 feel like Defendant made her feel, and no other coach had his hand or fingers under her shorts.

Victim 4 disclosed the molestation to her mother after her mother learned of the criminal investigation of Defendant. Victim 4's mother asked Victim 4 if the allegations were true, and Victim 4 stated "yes" and became very upset. Victim 4 said she was inappropriately touched underneath her shorts more than once.

### Victim 5

Shortly after January 2013, Defendant started coaching Victim 5. Defendant "would put his hands in [her] shorts whenever he was pushing [her] hips down or squaring them up to be in the right form." Defendant would put his hands into her shorts and his fingers would be "on [the]

4

V-line of [her] crotch area" roughly four inches from Victim 4's vagina. Defendant's fingers would stay under her shorts and apply pressure. Victim 5 demonstrated with a doll. Defendant put his fingers into her shorts multiple times. Defendant made no attempt to remove his fingers. This did not feel right to Victim 5 because none of the other coaches did that.

<u>Defendant</u>

On February 6, 2018, the investigating police detective interviewed Defendant. Defendant admitted he helped the victims with the oversplits stretch. Defendant also admitted he would have his hands in the area of the victims' vaginas while helping with the oversplits stretch. Defendant stated that if he was inappropriately touching the girls, he would have stopped. Defendant later admitted he touched the victims inappropriately and he was not going to hide it from law enforcement. Defendant admitted he knew the inappropriate touching happened more than once because he had become desensitized to inappropriately touching the victims. Finally, Defendant acknowledged that his fingers would slip inside the victims' shorts. When asked if he changed how he stretched the victims after his fingers slipped into their shorts, Defendant said he changed nothing and was not sure why. At trial, Defendant admitted he coached all five victims and assisted them with the oversplits stretch.

*Procedural History*

<u>Charges</u>

On February 25, 2020, the State filed a superseding indictment. Defendant moved to dismiss the superseding indictment on double jeopardy and jury unanimity grounds. In the alternative, Defendant moved for a bill of particulars. The trial court did not rule on this motion. On February 22, 2022, approximately five weeks before trial, the State filed a First Substitute

Information in Lieu of Indictment changing the date ranges of the offenses. On March 16, 2022, the State filed a Second Substitute Information containing the same date ranges.

## Motions for Judgment of Acquittal

Trial commenced on March 29, 2022. At the close of the State's evidence and again at the close of all the evidence, Defendant moved for judgment of acquittal on all counts because the State failed to prove that Defendant acted for the purpose of arousing or gratifying his sexual desire. Defendant also argued that insufficient evidence supported the attempted child molestation count. The trial court denied the motions.

## Juror Five

At the start of the last day of trial, the State informed the trial court of potential juror misconduct. Outside the presence of the jury, the trial court took sworn testimony from the State's victim advocate, Juror 5, and the remaining jurors, including the alternate juror, regarding the alleged juror misconduct.

The State's victim advocate testified that, at the conclusion of Defendant's direct examination the day before, the State's victim advocate went to the courtroom lobby. The victim advocate heard Juror 5 state, "They had been there for over a year and never said anything." The victim advocate did not see to whom Juror 5 was speaking. The victim advocate was not sure if there was a response because she was paying attention to only Juror 5. The victim advocate recalled seeing two jurors, including Juror 5, who appeared to be having a conversation. On re-direct examination, the victim advocate confirmed she did not hear a response.

Juror 5 did not recall making the statement, but conceded it was possible. Juror 5 explained the statement was not about the victims in this case, but about a prior personal experience. She repeatedly denied talking to any of the other jurors about the facts of the case. Juror 5 testified that

6

she needed to speak to the bailiff, and when she tried to explain the issue to the bailiff, the bailiff stopped her. Juror 5 said that she and the other jurors were standing just outside the door when she talked to the bailiff.

The State and defense counsel agreed to remove Juror 5 from the jury. The trial court removed Juror 5 and substituted the alternate juror. The court also swore the remaining members of the jury. Then, the court, the State, and defense counsel individually asked the remaining jurors whether they followed the court's instructions, discussed the case with anyone else, or heard anyone else discuss the case. All the jurors testified they followed the court's instructions, did not discuss the case with anyone else, and had not heard anyone else discuss the case.

## Jury Instructions 9 and 10

During the jury instruction conference, Defendant objected to Instructions 9 and 10, the verdict directors for Counts II and III. Defendant objected that the evidence at trial did not support the dates alleged for the molestation of Victims 3 and 4 and offered instructions changing the dates. The trial court overruled Defendant's objections.

## Verdict and Post-Trial Motions

On April 1, 2022, the jury found Defendant guilty on four counts of child molestation in the first degree and one count of attempted child molestation in the first degree.

After trial, Defendant moved to preserve the security video regarding the alleged juror misconduct, and the trial court granted the motion. The security video, which lacks audio, shows Juror 5 standing outside the courtroom talking to the bailiff momentarily. Then Juror 5 appears to make a statement to another juror as the State's victim advocate passes. Juror 5 does not talk further with the other juror. Eventually, approximately five jurors and the bailiff appear to engage in a conversation.

On April 26, 2022, more than three weeks after trial, Defendant filed a motion for new trial. On June 1, 2022, Defendant filed a motion to continue his sentencing hearing to further investigate juror misconduct, for an evidentiary hearing, and for discovery regarding juror misconduct. The motion acknowledged that the trial court questioned all the jurors but stated "it is nonetheless proper and just to grant the relief requested herein out of an abundance of caution." The trial court denied the motions and entered judgment.

Defendant now appeals.

## Discussion

Defendant raises five points on appeal. In his first point, Defendant argues the trial court erred in not declaring a mistrial and in denying his motion for new trial because the trial court failed to further investigate the alleged juror misconduct. In his second point, Defendant argues the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence because there was insufficient evidence that Defendant touched the victims for the purpose of arousing or gratifying his sexual desire. In his third point, Defendant argues the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence because there was insufficient evidence that Defendant committed the offense of attempted child molestation in the first degree. In his fourth point, Defendant argues the trial court erred in allowing the State to proceed on the Second Substitute Information because doing so denied Defendant the opportunity to adequately defend himself against the charges. In his fifth point, Defendant argues the trial court erred in submitting Instructions 9 and 10 to the jury because the instructions fatally varied from the charging documents.

*Point I: Juror Misconduct*

8

In his first point, Defendant argues the trial court erred in not declaring a mistrial and in denying his motion for new trial for juror misconduct because the trial court failed to further investigate the alleged juror misconduct.

Preservation

The State argues Defendant failed to preserve this claim for appellate review because the trial court granted all the relief requested and Defendant did not object or seek additional relief. Defendant claims he preserved the issue because he argued in his motion for new trial that the trial court erred in not further investigating juror misconduct and he filed a motion to continue the sentencing hearing for further investigation.

To preserve a claim for appellate review, a defendant must object to the alleged error at the earliest opportunity. *State v. Nickels*, 598 S.W.3d 626, 633 (Mo. App. E.D. 2020). He must also include the alleged error in his motion for new trial. *Id.* The claim in the motion for new trial must be the same as the claim on appeal. *Id.*

Here, Defendant failed to preserve the issue because he did not object to the trial court's resolution of the alleged juror misconduct. When the State brought the issue to the court's attention, the court took testimony from the State's victim advocate and Juror 5. The court also heard arguments from the State and Defendant, they agreed Juror 5 should be removed from the jury, and the court removed Juror 5. After removing Juror 5, the court individually questioned all the participating jurors, including the alternate juror, and confirmed they followed the court's instructions, did not discuss the case with anyone else, and did not hear anyone else discuss the case. Defendant agreed to the removal of Juror 5, did not object to the questioning of the participating jurors, and did not request any further relief.

9

Defendant did not raise any issue regarding the trial court's failure to investigate further until his motion for new trial filed more than three weeks after trial. Because Defendant failed to contemporaneously object to the trial court's resolution of the juror misconduct issue, Defendant did not preserve the issue for appellate review and we may review only for plain error pursuant to Rule 30.20.[2]

## Standard of Review

"[P]lain errors affecting substantial rights may be considered in the discretion of the court when the error has resulted in manifest injustice or miscarriage of justice." *State v. Johnson*, 524 S.W.3d 505, 513 (Mo. banc 2017) (quoting *State v. Hunt*, 451 S.W.3d 251, 260 (Mo. banc 2014)). The Court must first find whether the error claimed is plain error, and whether it affects substantial rights. *Johnson*, 524 S.W.3d at 513. "An error is plain if it is evident, obvious, and clear." *Id.* (internal quotations omitted). "Substantial rights are involved if, facially, there are significant grounds for believing that the error is of the type from which manifest injustice or miscarriage of justice could result if left uncorrected." *Id.* "In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review." *State v. Harris*, 658 S.W.3d 135, 146 (Mo. App. E.D. 2022) (quoting *State v. Osborn*, 504 S.W.3d 865, 872 (Mo. App. W.D. 2016)).

## Analysis

Defendant's first point relied on may be construed as raising three different issues. Defendant appears to argue the trial court erred, first, in failing to declare a mistrial *sua sponte*,

---

[2] All rule references are to the Missouri Supreme Court Rules (2022) unless otherwise indicated.

10

second, in not granting Defendant's motion for new trial, and third, in failing to further investigate juror misconduct.[3]

## Mistrial

"Mistrial is a drastic remedy and should be employed only in the most extraordinary circumstances." *State v. Boyd*, 659 S.W.3d 914, 926 (Mo. banc 2023) (quoting *State v. McFadden*, 369 S.W.3d 727, 740 (Mo. banc 2012)). "Whether to grant a mistrial 'is left to the discretion of the trial court because the trial court is in the best position to observe the impact of the problematic incident.'" *Boyd*, 659 S.W.3d at 926 (quoting *State v. Roberts*, 948 S.W.2d 577, 605 (Mo. banc 1997)). A trial court should grant a mistrial only in the case of "grievous error, which cannot be remedied otherwise." *State v. Carr*, 50 S.W.3d 848, 856 (Mo. App. W.D. 2001). "Moreover, a court should declare a mistrial sua sponte 'only in exceptional circumstances.'" *Boyd*, 659 S.W.3d at 926 (quoting *State v. Clay*, 975 S.W.2d 121, 134 (Mo. banc 1998)).

This Court's decision in *State v. Bailey*, 597 S.W.3d 436 (Mo. App. E.D. 2020), is instructive. There, the defendant alleged multiple incidents of juror misconduct, in which the bailiff improperly discussed the case with jurors. *Id.* at 446. This Court observed: "[T]he court carefully questioned the jurors regarding their interaction with the bailiff and its impact. Nothing in the record shows the bailiff discussed the merits of the case, the evidence presented, or gave instruction to the jury regarding how it should deliberate. No information was provided to the jurors outside the evidence and instructions presented at trial." *Id.* at 447. This Court held the defendant's right to a fair trial was not prejudiced and the trial court did not abuse its discretion in refusing to declare a mistrial. *Id.*

---

[3] Defendant's point appears to be multifarious in violation of Rule 84.04. *See Wallace v. Byrne*, 672 S.W.3d 96, 107 n.6 (Mo. App. E.D. 2023). Though we may choose not to address a multifarious point, we do so here *ex gratia*. *Id.*

Here, as in *Bailey*, Defendant's right to a fair trial was not prejudiced, as the trial court carefully questioned the jurors. The court confirmed the jurors followed the court's instructions and did not discuss the facts of the case. The trial court is entitled to make credibility determinations, and we will not disturb them on appeal. *See State v. Fraga*, 189 S.W.3d 585, 586 (Mo. App. S.D. 2006). After the court questioned the jurors and struck Juror 5, Defendant did not request a mistrial or any other additional relief. *See Goltz v. Masten*, 333 S.W.3d 522, 524 (Mo. App. W.D. 2011) (declining to review for plain error trial court's failure to declare mistrial where defendant did not request mistrial and trial court granted all relief sought by defendant).

Defendant cannot demonstrate any evident, obvious, and clear error from the trial court's refusal to *sua sponte* declare a mistrial, and we decline to review for plain error.

**Motion for New Trial**

Defendant also argues the trial court erred in not granting his motion for new trial. Defendant claims Juror 5 improperly influenced other jurors by discussing the case before deliberations began. Defendant relies heavily on video evidence of the alleged juror misconduct and the testimony of the State's victim advocate.

The security video shows only that Juror 5 talked with the bailiff and then made some statement to another juror before members of the jury and the bailiff engaged in a conversation. The State's victim advocate testified that she heard Juror 5 state, "They had been there for over a year and never said anything." The victim advocate did not see to whom Juror 5 was speaking and was not sure there was a response. The victim advocate recalled seeing two jurors, including Juror 5, who appeared to be having a conversation. On re-direct examination, the victim advocate confirmed she did not hear a response.

12

Juror 5 did not recall making the statement, but conceded it was possible. Juror 5 explained the statement was not about the victims in this case, but about a prior personal experience. She repeatedly denied talking to any of the other jurors about the facts of the case. Juror 5 testified that she needed to speak to the bailiff, and when she tried to explain the issue to the bailiff, the bailiff stopped her. All the other jurors confirmed they followed the court's instructions and did not discuss the facts of the case.

Defendant assumes that, because the other jurors were around and could have participated in the conversation, Juror 5 improperly influenced the jury. We decline to indulge Defendant's assumption. *See State v. Shockley*, 410 S.W.3d 179, 200–01 (Mo. banc 2013) (holding defendant's allegation of juror misconduct was without merit because there was nothing in the record to support defendant's assumption that a removed juror improperly influenced remaining jurors).

Even if the evidence may be characterized as conflicting, Defendant's argument is unavailing. In *State v. Chambers*, 891 S.W.2d 93 (Mo. banc 1994), the trial court denied the defendant's motion for new trial, finding there was conflicting evidence regarding whether the juror statements in question were actually made. *Id.* at 101. On review, the Supreme Court reasoned the trial court heard the evidence, evaluated witness credibility, and believed one witness over another. *Id.* Based on the trial court's credibility determination, the Supreme Court held the trial court did not abuse its discretion in denying the motion for new trial. *Id.*

What is clear here is that the trial court carefully questioned the jurors and allowed the State and defense counsel to question them as well. All members of the jury, including the alternate juror, clearly and unequivocally testified they followed the court's instructions, did not discuss the facts of the case, and did not hear anyone else discuss the facts of the case.

Because there is no evident, obvious, and clear error, we decline to review for plain error.

13

**Further Investigation**

Defendant argues the trial court erred in failing to further investigate potential juror misconduct. Defendant's claim fails because the trial court is not required to act beyond what is requested by the attorneys. *See Goltz*, 333 S.W.3d at 524.

The State directs us to *Edley v. O'Brien*, 918 S.W.2d 898 (Mo. App. S.D. 1996). There, the defendant argued the "trial court erred in failing to undertake any inquiry and/or remedial measures during trial when jury misconduct was twice reported to the trial court, and in denying plaintiffs' after-trial motions." *Id.* at 905. During trial, and after the misconduct occurred, the trial court asked the plaintiff's attorney for his requested relief and granted that relief. *Id.* at 906. No one, including the defendant, requested a mistrial. *Id.* Ultimately, the Southern District determined "the trial court committed no error in its actions regarding the reports made during trial of possible juror misconduct" because "a party may not assert as error that the trial court failed to do more than was requested." *Id.*

As in *Edley*, the trial court here granted all relief that was requested. Defendant did not ask for further investigation during trial. In fact, he did not raise any error or request any further relief until his motion for new trial filed more than three weeks after trial. Plain error cannot result from actions the trial court was not asked to take. *See id*; *see also Goltz*, 333 S.W.3d at 524. Because there was no evident, obvious, and clear error, we decline to review for plain error.

In sum, Defendant fails to show the trial court plainly erred in not granting a mistrial *sua sponte*, denying his motion for new trial, and failing to further investigate. Point I is denied.

*Point II: Insufficient Evidence as to Counts I through IV*

In his second point, Defendant argues that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence because there was insufficient evidence that Defendant touched the victims for the purpose of arousing or gratifying his sexual desire.

Standard of Review

"We review the denial of a motion for judgment of acquittal under the same standard of review used in reviewing a challenge to the sufficiency of the evidence to support a jury's guilty verdict." *State v. Sokolic*, 660 S.W.3d 54, 57 (Mo. App. E.D. 2023) (quoting *State v. Bennish*, 479 S.W.3d 678, 684–85 (Mo. App. E.D. 2015)). "When reviewing the sufficiency of the evidence, this Court's role is limited to determining whether there was sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt for each element of the charged offense." *State v. Holmes*, 626 S.W.3d 339, 341 (Mo. App. E.D. 2021) (internal quotations omitted). This Court must review the record in the light most favorable to the State, take as true the evidence and all logical inferences that support a finding of guilt, and ignore the evidence and inferences that do not support a finding of guilt. *Id.* at 341–42; *State v. Roy*, 407 S.W.3d 162, 166–67 (Mo. App. E.D. 2013). This Court must give great deference to the trier of fact. *Holmes*, 626 S.W.3d at 342.

Analysis

A person commits child molestation in the first degree "if he or she subjects another person who is less than fourteen years of age to sexual contact." Section 566.067.1 (Cum. Supp. 2007).[4] Sexual contact is defined as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through

---

[4] Unless otherwise indicated, all statutory references are to RSMo (2000) as amended.

the clothing, for the purpose of arousing or gratifying the sexual desire of any person." Section 566.010.4 (Cum. Supp. 2007).

"In assessing whether a defendant touched another for the purpose of arousing or gratifying the sexual desire of any person, a jury may infer intent from the surrounding circumstances or from the sexual nature of the act itself." *Holmes*, 626 S.W.3d at 342 (quoting *State v. Ganzorig*, 533 S.W.3d 824, 830 (Mo. App. E.D. 2017)) (internal quotations omitted). "Because direct evidence of a defendant's intent is rarely available, the State most often proves intent through circumstantial evidence." *Holmes*, 626 S.W.3d at 342. "The purpose of requiring proof of defendant's intent is to 'exclude innocent contacts from being deemed criminal conduct.'" *Id.* (quoting *State v. Gaines*, 316 S.W.3d 440, 456 (Mo. App. W.D. 2010)) "This Court has found, '[t]ouching a woman's vagina is an inherently sexual act, which can alone serve as evidence of Defendant's intent to arouse or gratify either his or her sexual desire.'" *Holmes*, 626 S.W.3d at 342 (quoting *Ganzorig*, 533 S.W.3d at 830).

Defendant argues the evidence was insufficient to prove that he acted with the purpose of arousing or gratifying his sexual desire. Defendant's argument ignores applicable case law, our standard of review, and the facts of this case. The four victims testified that Defendant touched them on their vaginas during the oversplits stretch. The victims testified Defendant touched their vaginas multiple times. Two of the victims also saw Defendant touch other victims on their vaginas.

Defendant himself told the police detective that he had his hand in the area of the victims' vaginas while he was helping them with the oversplits stretch. Defendant admitted "he knew that he touched some girls inappropriately" and that he wasn't going to hide it from law enforcement.

16

Finally, "he said that he knew it had happened more than once and that he had become desensitized to inappropriately touching them."

Defendant attempts to mitigate this evidence by pointing out there was no evidence presented at trial that Defendant made "statements to the girls that would allude to sexual gratification or sexual motivation." Additionally, Defendant highlights there was no evidence that Defendant's "penis was ever erect, no evidence about how long any alleged touching occurred, no evidence he moved his hands or fingers in a sexually stimulating manner, no evidence of grooming these girls, trying to get them alone for private sessions or touching them in any other sexually suggestive way."

Essentially, Defendant asks us to accept as true all evidence and inferences that support his version of events, which would turn our standard of review on its head. We review the record in the light most favorable to the verdict, take as true the evidence and all logical inferences that support a finding of guilt, and ignore all evidence and inferences to the contrary. *Holmes*, 626 S.W.3d at 341. Pursuant to this standard, there was sufficient evidence from which a reasonable juror could find beyond a reasonable doubt, as the jury did here, that Defendant acted with the purpose to arouse or gratify his sexual desire. Point II is denied.

*Point III: Insufficient Evidence as to Count V*

In his third point, Defendant argues the trial court erred in overruling Defendant's motion for judgment of acquittal at the close of all the evidence because there was insufficient evidence that Defendant committed the offense of attempted child molestation in the first degree as charged in Count V.

A person commits attempted child molestation in the first degree when, "with the purpose of committing the offense, he does any act which is a substantial step towards the commission of

17

the offense." Section 564.011 (transferred to Section 562.012 (2017)). "A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." *Id.*

Here, the State charged that Defendant "knowingly reached his hand underneath the shorts of [Victim 5], who was less than fourteen years old, and such conduct was a substantial step toward the commission of the offense of child molestation in the first degree of [Victim 5], and was done for the purpose of committing that offense." Defendant contends there was insufficient evidence that he touched Victim 5 for the purpose of arousing or gratifying his sexual desire. Defendant also contends his act of sticking his hand into Victim 5's shorts did not constitute a substantial step towards the commission of child molestation in the first degree.

Defendant's arguments are unpersuasive. As we found in Point II, there was sufficient evidence that Defendant acted with the purpose to arouse or gratify his sexual desire.

As authority for his argument that placing his hand inside Victim 5's shorts was not a substantial step towards the commission of child molestation in the first degree, Defendant cites *State v. Ess*, 453 S.W.3d 196 (Mo. banc 2015). The *Ess* Court held there was insufficient evidence of attempted child molestation in the first degree because the evidence "was not strongly corroborative of Ess's purpose to complete the offense of first-degree child molestation, which at the time required skin-to-skin contact by touching underneath the clothing." *Ess*, 453 S.W.3d at 208.

Defendant's reliance on *Ess* is misplaced as a matter of law and as a matter of fact. As a matter of law, the definition of "sexual contact" applicable in *Ess* required skin-to-skin contact and is not the definition applicable here. At the time of the offense here, "sexual contact" was defined as "any touching of another person with the genitals or any touching of the genitals or anus of

another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." Section 566.010 (Cum. Supp. 2007).

In any event, as a matter of fact, Victim 5 testified that Defendant "put his hands into [her] shorts and his fingers would just be like on [her] V-line of [her] crotch area." Victim 5 estimated that Defendant's fingers were within "roughly about 4 inches" of her vagina. She testified that no other coach did that and that Defendant did it more than once. Defendant admitted there "would be no professional gymnastics purpose" for putting his fingers in Victim 5's shorts.

In sum, there was sufficient evidence from which a reasonable juror could find beyond a reasonable doubt that Defendant acted for the purpose of arousing or gratifying his sexual desire and that Defendant took a substantial step towards the commission of child molestation in the first degree. Point III is denied.

*Point IV: Proceeding on the Second Substitute Information*

In his fourth point, Defendant argues the trial court erred in allowing the State to proceed on the Second Substitute Information because doing so denied Defendant the opportunity to adequately defend himself against the charges.

Preservation

The State contends Defendant failed to preserve this point for appellate review because Defendant did not object to proceeding on the Second Substitute Information. Defendant claims to have preserved the issue by filing a motion to dismiss, or in the alternative, a motion for bill of particulars, and by objecting to two jury instructions and proposing alternate instructions during the instruction conference.

Defendant did not contemporaneously object to proceeding on the Second Substitute Information, nor did he include the alleged error in his motion to dismiss, motion for bill of particulars, or motion for new trial. *See Nickels*, 598 S.W.3d at 633. Instead, Defendant raises this issue for the first time on appeal. Therefore, he has failed to preserve this issue for appeal, and we may review for only plain error. *See State v. Bales,* 630 S.W.3d 754, 762 (Mo. banc 2021) (quoting *Heifetz v. Apex Clayton*, Inc., 554 S.W.3d 397 n. 10 (Mo. banc 2018)).

<u>Analysis</u>

Rule 23.08, governing substitute informations, states:

Any information may be amended or an information may be substituted for an indictment at any time before verdict or finding if:

(a) No additional or different offense is charged, and
(b) A defendant's substantial rights are not thereby prejudiced.

No such amendment or substitution shall cause delay of a trial unless the court finds that a defendant needs further time to prepare a defense by reason of such amendment or substitution.

Defendant alleges his substantial rights were prejudiced. For Defendant to establish prejudice, he must show "(1) whether a defense to the charge as originally made would be equally available after the amendment, and (2) whether the defendant's evidence would be equally applicable after, as well as before, the amendment." *Stark v. State*, 644 S.W.3d 583, 588 (Mo. App. W.D. 2022) (quoting *State v. Nelson*, 505 S.W.3d 437, 443 (Mo. App. W.D. 2016)).

Defendant argues the State negated his impossibility or alibi defense by filing the Second Substitute Information. Defendant alleges "the State was aware from very early on in the case that defense counsel was concerned with the dates charged in the charging documents." Further, Defendant alleges he was building an impossibility defense based upon the dates contained in the superseding indictment.

20

The State's proceeding on the Second Substitute Information did not prejudice Defendant's substantial rights. First, the date ranges in the Second Substitute Information were unchanged from the First Substitute Information filed more than a month before trial. Second, during his police interview, Defendant admitted sticking his hands into the victims' vaginal areas. Defendant also admitted he may have inappropriately touched the victims multiple times and became desensitized to how he was touching the victims. During his trial testimony, Defendant confirmed he coached the victims and helped them with the oversplits stretch. Defendant and other witnesses also confirmed that Defendant worked at Kids in Motion during the relevant time frames.

Defendant's substantial rights were not prejudiced by the State's proceeding on the Second Substitute Information. Defendant therefore cannot establish any evident, obvious, and clear error, and we decline to review for plain error. Point IV is denied.

*Point V: Variances in Instructions 9 and 10*

In his fifth and final point, Defendant argues the trial court erred in submitting Instructions 9 and 10 because they fatally varied from the charging documents.

<u>Preservation</u>

The State contends Defendant failed to preserve the alleged instructional error because he did not object to Instructions 9 and 10 on variance grounds.

To preserve a claim of instructional error, counsel must make a specific objection, stating distinctly the matter objected to and the grounds of the objection. *State v. Borst*, 643 S.W.3d 586, 590 (Mo. App. W.D. 2022). Once a defendant objects at trial, he must raise the same issue in a motion for new trial and in his point relied on. *State v. Marks*, 670 S.W.3d 135, 139 (Mo. App. W.D. 2023); *Edwards v. State*, 636 S.W.3d 606, 614 (Mo. App. E.D. 2021) (quoting *State v. Barnes*, 583 S.W.3d 458, 462 (Mo. App. S.D. 2019)).

During the instruction conference, Defendant objected to Instructions 9 and 10 as lacking evidentiary support for the date ranges in the instructions. Defendant offered instructions changing the dates. The trial court overruled Defendant's objections to Instructions 9 and 10. In Defendant's motion for new trial, he raised a jury unanimity issue regarding Instructions 9 and 10, pursuant to *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011). On appeal, he offers a third theory that Instructions 9 and 10 fatally varied from the charging documents.

At every opportunity, Defendant has changed his theory regarding how the trial court erred in submitting Instructions 9 and 10. He thus has failed to preserve any instructional issue for appeal, and we may review for only plain error.

## Standard of Review

"Instructional error seldom rises to the level of plain error." *State v. Weaver*, 475 S.W.3d 695, 698 (Mo. App. E.D. 2015) (quoting *State v. Drisdel*, 417 S.W.3d 773, 786 (Mo. App. E.D. 2013)). "In the context of whether a variance amounts to a plain error affecting the verdict, the question is whether the defendant can demonstrate prejudice in that he would have been better able to defend his case had the change not occurred." *Weaver*, 475 S.W.3d at 698.

## Analysis

As a preliminary matter, we must determine whether there was a variance between the Second Substitute Information and Instructions 9 and 10. "A variance occurs when the conduct described in the charging instrument differs from the conduct described in the jury instructions." *State v. Cruz-Basurto*, 581 S.W.3d 51, 56 (Mo. App. W.D. 2019). Said another way, if the "crime may be committed by any of several methods, the method in the verdict-directing instruction must be the same as that charged in the indictment," otherwise there is a variance. *State v. Ganaway*, 624 S.W.3d 361, 367 (Mo. App. E.D. 2021); *see also Borst*, 643 S.W.3d at 592.

22

Count II of the Second Substitute Information, the charging document on which the State proceeded to trial,[5] charged Defendant with molesting Victim 3 "on or between April 20, 2012 to August 23, 2014." Count III charged Defendant with molesting Victim 4 "on or about August 21, 2011 to August 20, 2014." Instruction 9, the verdict director for Count II, listed the dates of the offense for Victim 3 as "on or between April 20, 2013 and April 19, 2014." Instruction 10, the verdict director for Count III, listed the dates of the offense for Victim 4 as "on or between August 1, 2012 and April 19, 2014."

The date ranges in Counts II and III of the Second Substitute Information are inclusive of the date ranges in Instructions 9 and 10. There is not a fatal variance between the charging document and the jury instructions. Accordingly, there is no evident, obvious, and clear error, Defendant was not prejudiced, and we decline to review for plain error. Point V is denied.

## Conclusion

For the forgoing reasons, we affirm the judgment of the trial court.

Cristian M. Stevens, J.

Robert M. Clayton, III, P.J., and
Philip M. Hess, J., concur.

---

[5] Defendant argues the date ranges in the jury instructions vary from the date ranges in the superseding indictment, the First Substitute Information, and the Second Substitute Information. The State proceeded to trial on only the Second Substitute Information, meaning it is the only relevant charging document relative to a variance with the jury instructions.